Willie K. BEAN, Appellant,

v.

UNITED STATES, Appellee.

No. 13434.

District of Columbia Court of Appeals.

Argued April 10, 1979.

Decided June 27, 1979.

Craig D. Katz, Washington, D. C., appointed by the court, for appellant.

Richard W. Goldman, Asst. U. S. Atty., Washington, D. C., with whom Earl J. Silbert, U. S. Atty., John A. Terry and Michael W. Farrell, Asst. U. S. Attys., Washington, D. C., were on the brief, for appellee.

Before NEWMAN, Chief Judge, and KELLY and FERREN, Associate Judges.

KELLY, Associate Judge:

Appellant brings this appeal from a conviction of armed robbery, D.C.Code 1973, §§ 22–2901, –3202, arguing that (1) the government violated the speedy trial provisions of the Interstate Agreement on Detainers Act (IAD Act), D.C.Code 1973, § 24–701; 18 U.S.C. App. arts. III, IV (1976); (2) he was denied his right to a speedy trial in general; and (3) insufficient evidence was presented to sustain the conviction. We disagree and affirm.

Evidence adduced at trial showed that on January 31, 1977, appellant entered a store owned by James McRay and staffed by James Adams, Wayne Thomas, and Jerome Taylor; that he approached Adams, who knew him; produced a gun; and demanded money. At the time, Adams and Thomas were present along with two customers. Initially Adams tried to dissuade appellant from the crime, but because of appellant's persistence he finally said, "Well, go ahead and get it," referring to the money in the cash register.

The incident was witnessed by Adams, Thomas, and one customer. Thomas and the customer identified appellant at a lineup and at trial. Adams did not pick appellant's picture out of a photographic array, noting that he wanted "to just take care of it myself." He relented, however, and on the day after he declined to identify appellant's photograph, he was once again presented with an array, upon his own request, and this time he identified appellant, as he did at trial.

On February 4, 1977, the police apprehended appellant after a high speed chase led them into Prince George's County, Maryland. Appellant was detained in Upper Marlboro, Maryland, as a fugitive. A

warrant for his arrest was lodged with Prince George's County officials. Appellant waived extradition and was brought to the District of Columbia where he was presented and detained.

On March 14, 1977, federal authorities in Maryland requested, through a writ of habeas corpus ad prosequendum, that appellant be returned to Maryland to face federal charges stemming from the February 4, 1977 incident.[1] He was so returned, and he pleaded guilty in Maryland to various criminal charges. After sentencing, appellant was returned to the District of Columbia where he began serving his Maryland federal sentence[2] and awaited trial on the District of Columbia charges.

Appellant was indicted on the District of Columbia charges[3] on June 13, 1977. After various motions, hearings and continuances, requested by both appellant and the government, he was reindicted on September 22, 1977.[4] More motions and continuances followed, the latter being occasioned by court delay and government request. The case was reached for trial on March 13, 1978, and the jury returned its verdict two days later. More than 13 months had elapsed since appellant's arrest in Maryland; 396 days passed between appellant's initial transfer from Maryland to the District of Columbia and his trial.

■ The trial court found, and we agree, that appellant's return to the District of Columbia should have been automatic and therefore the IAD Act has no applicability. As appellant's trial counsel conceded, the IAD Act does not become pertinent until an individual is tried, convicted, and sentenced in another jurisdiction.[5] Therefore, our scrutiny of the facts does not begin until

1. The high speed chase took place on the Baltimore-Washington Parkway, a federal highway.

2. Appellant was sentenced in Maryland to one year for fleeing a police officer and six months for speeding, concurrently.

3. Appellant was indicted both for offenses stemming from the January 31 robbery and offenses derived from the chase of February 4, 1977.

4. Appellant makes no allegation that the filing of the superceding indictment was impermissible.

5. Arguably, the IAD Act does not come into play until an individual is incarcerated in the sending state. On these facts, we need not go so far, and thus we do not.

the point at which appellant was convicted on the Maryland charges. Appellant urges that a detainer was lodged against him at that point, but, as discussed *infra*, the record does not so indicate. Rather, since they obtained custody over appellant through the ad prosequendum writ, the Maryland authorities were under an obligation to return him at the conclusion of the local proceedings. They did so.

The IAD Act contains no definition of a detainer. *United States v. Mauro*, 436 U.S. 340, 359, 98 S.Ct. 1834, 56 L.Ed.2d 329 (1978). *Mauro* indicates two things, however: a request for a prisoner through a writ of habeas corpus ad prosequendum is not a detainer, *id.* at 360, 98 S.Ct. 1834; and the service of an arrest warrant is a detainer, *see id.* at 346, 98 S.Ct. 1834. But the IAD Act makes it clear that the speedy trial provisions of the Act apply only "[w]henever a person has entered upon a term of imprisonment in a penal or correctional institution . . . ." D.C.Code 1973, § 24–701; 18 U.S.C. App. art. III(a) (1976). Then, and only then, is a jurisdiction that receives an individual pursuant to a detainer and a written request for custody under an obligation to bring that individual to trial within the time limits of the IAD Act.[6]

There is some confusion in this case as to the specific authority under which appellant was returned to the District of Columbia. Appellant makes constant reference to a detainer having been filed against him. The government submits that although a warrant was presented to the Maryland authorities, no other order to transfer appellant was issued and the warrant did not constitute a detainer. The trial judge ruled that appellant was returned to the District of Columbia from Maryland by virtue of the operation of the ad prosequendum writ and that no detainer issued.

In point of fact, a detainer was lodged against appellant; that is, the warrant issued on February 5, 1977. That detainer, however, was without the purview of the IAD Act as appellant was not, at that time, serving a sentence in Maryland.

Although a detainer can remain active for a long time, we note that this detainer did not survive to the point of appellant's incarceration. That fact is documented by appellant's receipt of consideration by the federal authorities in Maryland of "good time" in relation to the service of his sentence on the Maryland charges. *See United States v. Mauro, supra*, 358 n.25, 98 S.Ct. 1834. Furthermore, there was no allegation that appellant was denied the opportunity to participate in rehabilitation programs or was subject to any of the ills that the IAD Act was enacted to prevent.

Appellant also argues that, in any event, the 13-month delay between his arrest and trial was excessive and violated his right to a speedy trial. We recognize that a showing of a delay greater than one year makes out a prima facie case of prejudicial delay. *Branch v. United States*, D.C.App., 372 A.2d 998 (1977). After factoring out delay caused by appellant and discounting, while charging to the government, delay occasioned by neutral sources such as crowded court dockets and the process of presentment, arraignment, pretrial motions, and the like, *see United States v. Bolden*, D.C.App., 381 A.2d 624 (1977); *Smith v. United States*, D.C.App., 379 A.2d 1166 (1977); *United States v. Bishton*, 150 U.S. App.D.C. 51, 463 F.2d 887 (1970); *Hedgepeth v. United States*, 124 U.S.App.D.C. 291, 364 F.2d 684 (1966), we conclude that appellant was not denied his right to a speedy trial under the four-part test announced in *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972).[7]

---

6. When a prisoner makes a written request for a final disposition of the indictment or information underlying the detainer, the receiving jurisdiction is obliged to try him within 180 days from the date of the request. If an officer of the receiving jurisdiction makes a request for custody, the time period is 120 days. IAD Act,

D.C.Code 1973, § 24–701; 18 U.S.C. App. arts. III, IV (1976).

7. We look to the length of delay, the reasons for delay, the assertion of the right to speedy trial, and prejudice resulting from the delay.

Appellant's third argument merits only brief discussion. He contends that there was insufficient evidence presented at trial to show (1) the taking of the money was against the will of the complainant, (2) the taking was the result of force or violence or the fear thereof, (3) the property was in the actual possession of the complainant, and (4) he had the intent to steal property belonging to the complainant.

■ Viewing the evidence in the light most favorable to the government, *Franey v. United States*, D.C.App., 382 A.2d 1019 (1978); *Womack v. United States*, D.C.App., 350 A.2d 381 (1976); *Crawford v. United States*, 126 U.S.App.D.C. 156, 375 F.2d 332 (1967), it clearly sufficed to support a conviction of armed robbery. Although appellant knew the complainant there was no evidence presented to rebut the natural conclusion that when an individual points a gun at another, that second individual's subsequent actions result from fear and are not willful. The evidence showed that the complainant was a sales clerk in the store and thus was in constructive possession of the money in the cash register. *Jones v. United States*, D.C.App., 362 A.2d 718 (1976), and that at the time of the robbery the complainant was in the general area of the register. Finally, appellant's contention that the complainant was not the owner of the property is irrelevant.

We find no violation of the IAD Act, no violation of the right to a speedy trial, and sufficient evidence to sustain the conviction.

*Affirmed.*[8]

---

8. Appellant maintains correctly that the judgment and commitment order erroneously reports not only that he entered a guilty plea but also that the verdict in this case was rendered by the court rather than the jury. These clerical errors must be corrected pursuant to Super. Ct.Cr.R. 36.