Albert F. SMITH, Appellant,

v.

UNITED STATES, Appellee.

No. 81–1437.

District of Columbia Court of Appeals.

Argued July 5, 1983.

Decided Dec. 15, 1983.

---

Richard S. Greenlee, Public Defender Service, Washington, D.C., with whom A. Franklin Burgess, Public Defender Service, Washington, D.C., at the time the brief was filed, was on the brief, for appellant. Linda Jacobson, Washington, D.C., also entered an appearance for appellant.

John E. Stevens, Asst. U.S. Atty., Washington, D.C., with whom Stanley S. Harris, U.S. Atty., Washington, D.C., at the time the brief was filed, Michael W. Farrell, John R. Fisher, and David S. Krakoff, Asst. U.S. Attys., Washington, D.C., were on the brief, for appellee.

Before KERN and FERREN, Associate Judges, and PAIR, Associate Judge, Retired.

KERN, Associate Judge:

Appellant and his codefendant were convicted by a jury of a variety of crimes arising out of the strangling of one victim and the wounding by pistol of two other victims.[1] Appellant raises a number of contentions, only one of which requires extended discussion.[2] Specifically, appel-

---

1. Thus, appellant was convicted of second-degree murder, D.C.Code § 22–2403 (1981), and attempted robbery, D.C.Code § 22–2902 (1981); assault with intent to kill while armed, D.C.Code §§ 22–501, –3202 (1981), and carrying a pistol without a license, D.C.Code § 22–3204 (1981); and, assault with intent to kill while armed, obstruction of justice, D.C.Code § 22–703 (1981).

2. The evidence was that appellant choked Frank Cheek to death while the codefendant pinned the victim's arms; and, when a few days later Donald Long and Ellsworth Vaughan publicly voiced their suspicions that Cheek had been murdered, appellant in the company of his codefendant confronted and shot first Vaughan and then Long. Appellant unsuccessfully sought before trial to sever the death by strangling charge from the shooting charges; now he complains that the trial court, in allowing the jury during the trial to hear evidence of all

three crimes, failed to make an express finding that the probative value of all the evidence outweighed the prejudice accruing to him as a result of the jury hearing about all three crimes. Since the grant of severance during trial is left to the court's discretion and since it is undisputed under the particular circumstances that the evidence of each crime was admissible in the proof of the others, we are not persuaded there was an abuse of discretion here. *See Robinson v. United States,* 452 A.2d 354, 358 (D.C.1982).

We also find without merit appellant's claim that the trial court in its charge to the jury should have *sua sponte* given a limiting instruction as to the use the jury might make of the evidence of one crime in their determination of the other crimes. Given the fact that the jury was instructed on the need to keep the overlapping evidence of each crime charged separate in its deliberations, we reject this claim. *See*

**318**

lant claims that the trial court erred in refusing to grant his pretrial motion to dismiss some of the counts of the indictment filed against him, including the murder charge and the assault and related charges arising out of one of the shootings, because the government failed to abide by the terms of the Interstate Agreement on Detainers (IAD). D.C.Code §§ 24–701 (1981) *et seq.*

The sequence of events pertinent to the claim that the IAD was violated is as follows. Appellant allegedly committed within the District the crimes of murder and assault with a pistol in late September and early October 1979. In response to police requests and based upon eyewitness accounts, the trial court issued warrants for his arrest on these crimes. In November 1979, appellant and his codefendant were arrested in South Carolina for offenses they had committed there. Shortly thereafter, the South Carolina police advised the District police that appellant was in their custody and two District detectives went to South Carolina to interview him (and his codefendant). Appellant and his codefendant were shown the Superior Court warrants for their arrest and also excerpts from the affidavits underlying the applications for the warrants. Appellant freely admitted to the District detectives shooting the victims Vaughan and Long but denied the strangling of the victim Cheek. (Record at 18.) At the request of the South Carolina police and as "a matter of professional courtesy" the District officers left copies of the warrants for the arrest of appellant and his codefendant who remained incarcerated in South Carolina to face prosecution there.

Some months later, in April 1980, appellant was sentenced by the South Carolina court to serve eight to twenty-seven years' imprisonment for kidnapping and armed robbery, among others, committed by him in *that* jurisdiction. In November 1980 the Grand Jury in the District of Columbia returned indictments charging appellant with the murder of Mr. Cheek and the assault with intent to kill of Messrs. Vaughan and Long. In June 1981 appellant's trial took place on these charges after the trial court had denied his motion to dismiss counts in the indictment against him for violation of the IAD.

The portions of the IAD relevant to appellant's claim, D.C.Code § 24–701, Article III, read as follows:

(a) Whenever a person has entered upon a term of imprisonment in a ... party State, and whenever during the continuance of the term of imprisonment there is pending in any other party State any untried ... complaint on the basis of which a detainer has been lodged against the prisoner, he shall be brought to trial within one hundred and eighty days after he shall have caused to be delivered to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction written notice of the place of his

*Miles v. United States,* 374 A.2d 278, 283 (D.C. App.1977).

Appellant also claims that the trial court denied him a fair trial by admitting into evidence certain testimony at trial concerning threats he had uttered to witnesses (which evidence concededly was admissible), but failing to instruct the jurors that their consideration of such threats was to be limited only to its showing of appellant's consciousness of guilt. In the absence of any request for such limiting instruction and given the strength of the evidence against appellant, we are not persuaded reversal is called for here. *See Proctor v. United States,* 381 A.2d 249, 251 (D.C.1977).

Appellant complains that the court erred in refusing to order the prosecutor to turn over to the defense police investigation notes referring to one Christopher Miller as a *possible* suspect. The record reflects that appellant and his codefendant committed their crimes in the presence of eyewitnesses and the police investigative notes on this possible suspect may properly be considered as an investigation of rumors, not exculpatory evidence. Accordingly, the trial court's ruling was correct. *United States v. Sedgwick,* 345 A.2d 465 (D.C.1975), *cert. denied,* 425 U.S. 966, 96 S.Ct. 1751, 48 L.Ed.2d 210 (1976).

Finally, appellant's claim that the fact that he fired a pistol at close range at the victim Ellsworth Vaughan yet only wounded him twice required a finding of not guilty of an assault with intent to kill is wholly without merit.

imprisonment and *his request for a final disposition to be made of the complaint.*

(c) The . . . official having custody of the prisoner shall promptly inform him of the source and contents of any detainer lodged against him and shall also inform him of his right to make a request for final disposition of the indictment, information, or complaint on which the detainer is based. [Emphasis added.]

Appellant argues that in April 1980 when he commenced the service of the sentence imposed by South Carolina, a party State to the IAD, there was pending in the District of Columbia an "untried . . . complaint," *viz.,* the warrant issued by the Superior Court for his arrest and left with the South Carolina police by the District officers. This warrant, in appellant's view, constituted a "detainer" within the meaning of the IAD. Therefore, appellant argues that the District was obliged by the IAD to bring him to trial no later than November 1980, 180 days after he commenced serving his sentence in South Carolina, rather than June 1981.

■ Assuming only for the purpose of determining this appeal that the copy of the Superior Court warrant for appellant's arrest constitutes a detainer within the meaning of the IAD,[3] we note that appellant *must* meet another requirement of the IAD before he can "trigger" the running of 180 days within which to be brought to trial: He must have delivered to the Superior Court, as required by the IAD, his request for "a final disposition to be made of the

complaint."  *See Dobson v. United States,* 449 A.2d 1082, 1083 (D.C.1982).

Appellant acknowledges that between April 1980 when he commenced service of sentence in South Carolina and June 1981 when he went to trial in the Superior Court, he had not requested a final disposition to be made of the indictment against him in the District. Thus, appellant appears to have waived his right to trial in the District, while serving his sentence in South Carolina, by his failure to request the Superior Court and the United States Attorney to proceed with trial. Appellant seeks to overcome his conceded failure to have complied with the express terms of the IAD, *viz.,* requesting "final disposition to be made of the . . . complaint" in the District; he argues that his failure was occasioned by the failure of the "official having custody" of him in South Carolina to "promptly inform him of the source and contents of any detainer lodged against him" and "also inform him of his right to make a request for final disposition of the . . . complaint on which the detainer is based," as required by the IAD.

However, the record makes absolutely clear that appellant was in November 1979 —before he even commenced his prison service in South Carolina—informed by the District detectives of the source and contents of the warrant for his arrest, which appellant now asserts was a "detainer." Indeed, appellant was shown portions of the affidavit in support of such warrant. (Record at 10–20.) In addition, the record reflects that appellant, after being informed of the details of the charges against

---

3. In *Bean v. United States,* 409 A.2d 1064 (D.C. 1979), this court commented (at 1066) that while the IAD does not define "a detainer" the Supreme Court "indicates" that "the service of an arrest warrant is a detainer," and cited as support *United States v. Mauro,* 436 U.S. 340, 98 S.Ct. 1834, 56 L.Ed.2d 329 (1978). However, in *Mauro,* (at 346, 98 S.Ct. at 1840) the Court was dealing with a factual situation where the federal law enforcement officials "lodged the federal bank robbery warrant as a detainer against him with the state prison authorities." Thus, there is a question whether *Mauro* stands for the proposition that *anytime* an arrest war-

rant comes into the hands of officials in another state who may be holding a defendant this occurrence *alone* constitutes the lodging of a detainer within the meaning of the IAD. Here, the warrant for appellant's arrest issued by the Superior Court in October 1979 was left with the South Carolina police in November 1979 by the District of Columbia police at the former's request and "as a matter of professional courtesy." The trial court specifically found leaving the warrants under these circumstances was *not* "an attempt" to lodge a detainer. (Supp. Record II at 171–72.)

him in the District by the District's detectives who had come to South Carolina to interview him, *admitted* committing two of the three crimes charged against him. (Record at 18.) Moreover, the codefendant readily confessed (Record at 15) that he and appellant had shot *both* Mr. Vaughan and Mr. Long.

Under these circumstances, there can be no doubt that appellant, upon the basis of (a) the warrant and affidavit shown him and (b) his interview with the District detectives, knew as early as November 1979 precisely what charges had been brought against him in the Superior Court of the District of Columbia by the prosecutor there and the basis for such charges. Additionally, appellant acknowledged the truth of most of the charges pending in the District against him.

Accordingly, the narrow question remaining is whether it is reasonable to conclude upon this record that appellant, knowing in November 1979 of the precise source and nature of the charges against him in the District and admitting to some of them, failed to request the Superior Court to proceed to dispose of these charges solely because the South Carolina officials did not inform him that he had a right to so request. Given the particular circumstances here that appellant was fully informed of the charges and admitted most of them, we deem it reasonable to conclude that his failure to request of the District to proceed to try the charges was because he had no interest in proceeding with them. We note also that after receiving ample notice of the charges in the District against him he then proceeded to undergo a significant experience with the workings of the criminal justice system, *viz.*, arrest and then conviction and sentence by the court in South Carolina. Thus, we are not persuaded he can explain away his failure to request the District to proceed with its charges simply because the South Carolina officials did not tell him he could ask the District to proceed with the charges of which the District had already fully informed him.

We conclude that "the burden of substantial compliance" with the IAD fell upon appellant and that under the particular circumstances here he did not carry such burden. *McBride v. United States,* 393 A.2d 123, 128–29 (D.C.1978). Accordingly, we conclude that appellant waived his right to request the Superior Court to dispose of his charges prior to the time he went to trial in the District in June 1981. Surely it would make a mockery of the beneficial objectives of the IAD if we were to hold otherwise upon the unusual facts in the instant case where appellant was fully informed by the District of its charges against him and freely admitted most of them. His failure to press for disposition of these charges was a consequence of his admission of them rather than his ignorance of them. *See Christian v. United States,* 394 A.2d 1, 38–39 (D.C.1978) ("The Agreement is a long-overdue piece of legislation designed to correct untenable abuses by government officials in the use of detainers. This is not to say, however, that it should be interpreted so as to create a sanctuary on appeal for convicted defendants. It must be construed soundly.")

*Affirmed.**

* Our concurring colleague seeks to circumvent the flat assertion of our decision in *Bean, supra,* n. 2, by engaging in a "functional analysis" to determine whether the arrest warrant here was "intended as, or accorded the status of, a detainer." However, this court in *Bean* (at 1066), flatly concluded that "service of an arrest warrant is a detainer." Here, the District police at the request of South Carolina officials left the warrant for appellant's arrest with them. *At a later point, South Carolina officials* unequivocally stated that the warrant was deemed by them to be a detainer. (Record at 2068.)

Our concurring colleague also undertakes as a part of his "functional analysis," a determination of the prejudice *vel non* to appellant's rehabilitation in the South Carolina prison system pending his trial in the District. However, the record before us is silent on this aspect of the case and we decline to join our colleague in his speculation.

FERREN, Associate Judge, concurring in the result:

I concur in the judgment of affirmance, but not in the opinion of the court, for I do not believe "a detainer has been lodged against" appellant within the meaning of the Interstate Agreement on Detainers (IAD), D.C.Code § 24–701, Art. III(a) (1981). If the warrant had been lodged as a detainer, as the opinion of the court assumes, I could not find substantial compliance with the IAD. On the facts here, the custodial jurisdiction, South Carolina, did not inform appellant "of his right to make a request for final disposition of the indictment ... on which the detainer is based," as required by IAD § 24–701, Art. III(c). Consequently, on the assumption that the warrant was a detainer, the court should have grappled with the question whether dismissal of the indictment or some lesser sanction is appropriate (a question I need not reach).

## I.

In October 1979, a District of Columbia trial court issued an arrest warrant charging appellant with the murder of Frank Cheek and the shooting of Donald Long. On November 26, 1979, South Carolina law enforcement authorities arrested appellant on unrelated armed robbery and kidnapping charges arising in South Carolina. While processing appellant, the South Carolina authorities ran a computer check through the National Crime Information Center (NCIC) and learned of the existence of the outstanding District of Columbia warrant. South Carolina authorities notified the District's Metropolitan Police Department (MPD) that they had custody of appellant. On November 28 or 29, 1979, two MPD detectives travelled to South Carolina with copies of the District of Columbia warrant to interview appellant. The detectives showed the warrant to appellant to identify themselves, to prove the existence of the charges, and to impress upon him the seriousness of the situation. As the detectives were leaving the interview, a South Carolina detective requested a copy of the arrest warrant, which the MPD detectives gave him as a "matter of courtesy."

In April 1980, appellant was convicted, sentenced, and imprisoned for the South Carolina offenses. Somehow, the copy of the District of Columbia warrant was placed in appellant's prison file upon his incarceration in South Carolina. When an Assistant United States Attorney called the South Carolina prison in September 1980, however, he was told that there were no detainers against appellant.

In November 1980, the grand jury indicted appellant for the District of Columbia offenses referred to in the warrant, as well as for an additional shooting and for assorted incidents alleged to constitute obstruction of justice. Appellant's trial here began in June 1981 and resulted in his convictions for second degree murder, assault with intent to kill while armed, attempted robbery, carrying a pistol without a license, and obstruction of justice.

A month before trial, on inquiry by appellant's counsel, the Public Defender Service, the South Carolina custodian of prison records had sent the following telegram dated May 12, 1981: "Be advised the affidavit in support of arrest warrant and complaint received in this office on April 22 1979 [sic] are considered by me to be detainers placed against Mr. Smith. Ed Balog." It does not appear that the prosecutor made a similar inquiry after September 1980 (when he received a contrary response).

## II.

Appellant argues that the District of Columbia arrest warrant placed in his South Carolina prison file upon his incarceration there in April 1980 was a detainer under the IAD § 24–701, Art. III(a). *Ante* at 318–319. He asserts that under § 24–701, Art. III(c), *ante* at 319, he had a right to be notified of the detainer so that he could request expeditious trial of the District of Columbia charges—within 180 days of his request—pursuant to § 24–701, Art. III(a). Because the South Carolina authori-

ties did not advise him of his IAD rights, he says he did not know he could make the request. His District of Columbia trial did not take place until much later than his IAD rights, if asserted, would have required. He argues, accordingly, that he should be deemed to have requested a District of Columbia trial as of the time he was imprisoned in South Carolina: April 1980. Because trial did not take place here until June 1981, he maintains that his indictment should be dismissed for failure to meet the 180-day requirement.

### III.

The IAD does not define "detainer," but when Congress adopted the IAD for the United States and the District of Columbia, it explained: "a detainer is a notification filed with the institution in which a prisoner is serving a sentence, advising that he is wanted to face pending criminal charges in another jurisdiction." H.R.REP. No. 1018, 91st Cong., 2d Sess. 2 (1970); S.REP. No. 1356, 91st Cong., 2d Sess. 2, U.S.Code Cong. & Admin.News 1970, pp. 4864, 4865 (1970) *quoted in United States v. Mauro,* 436 U.S. 340, 359, 98 S.Ct. 1834, 1846, 56 L.Ed.2d 329 (1978) and *Dobson v. United States,* 449 A.2d 1082, 1085 (D.C.1982); *see Gale v. United States,* 391 A.2d 230, 233 (D.C.1978). According to case law, a detainer requests the "custodial" or "sending" jurisdiction to notify the "prosecuting" or "receiving" jurisdiction, *McBride v. United States,* 393 A.2d 123, 127 (D.C.1978), before the inmate's release, *Christian v. United States,* 394 A.2d 1, 34 (D.C.1978), *cert. denied,* 442 U.S. 944, 99 S.Ct. 2889, 61 L.Ed.2d 315 (1979), and to hold him for delivery to the prosecuting/receiving jurisdiction. *State v. Newman,* 117 R.I. 354, 358, 367 A.2d 200, 202 n. 1 (1976).

A warrant may be a detainer, but only if "lodged" as such. D.C.Code § 24–701, Art. III(a) (1981); *see Mauro, supra,* 436 U.S. at

346, 98 S.Ct. at 1840; *Bean v. United States,* 409 A.2d 1064, 1066 (D.C.1979); *ante* at 319 n. 3.[1] Thus, a functional analysis is necessary to determine whether the warrant here was lodged as a detainer, *i.e.,* was intended as, or accorded the status of, a detainer.

If it is unclear whether the prosecuting/receiving jurisdiction intended a detainer, and if the inmate did not suffer any of the prejudice inherent in a detainer, the IAD may not apply. On the other hand, if the District of Columbia intended the warrant to function as a detainer, and thus can be said to have "lodged" a detainer, then the District should be strictly bound by the IAD requirements regardless of prejudice to the defendant—as would be the case if a designated "detainer" had been lodged. Similarly, if the District did not intend to file a detainer, but appellant suffered the ill effects associated with detainers as a result of governmental conduct, then the warrant would have functioned as a detainer, and the IAD accordingly should apply.

*Intent*

On this record, there is no showing that District of Columbia officials either intended the arrest warrant as a detainer or sought to avoid the provisions of the IAD. The arrest warrant—originally obtained through an NCIC computer check—was placed in appellant's prison file at the request of South Carolina, not District, officials. The prosecutor apparently did not know that the arrest warrant was in appellant's file and, on inquiring, learned from South Carolina officials that no detainer was on file. Moreover, the warrant itself, unlike a typical detainer, did not request that South Carolina notify the District of Columbia before releasing appellant or hold him for the District upon completion of his sentence. Thus, the prosecution did not either intend to lodge a detainer or seek to

---

1. The majority at one point indicates that *Bean, supra,* is dispositive of this issue. *Ante* at 320 n. *. However, the majority's analysis of the *Bean* holding elsewhere in the opinion, *ante* at 319 n. 3, amply demonstrates that Bean is not

properly read as authority for the proposition that an arrest warrant always constitutes a detainer. Indeed, it is apparently because of this ambiguity in *Bean* that the majority declined to decide the issue in this case.

obtain its advantages.[2] Accordingly, the IAD should not apply unless the warrant effectively functioned as a detainer, prejudicing appellant in the absence of notice of his IAD rights by South Carolina officials.

*Prejudice*

Congress designed the IAD to eliminate "uncertainties which obstruct programs of prisoner treatment and rehabilitation." D.C.Code § 24–701, Art. 1. Courts and commentators have recognized that certain specific forms of prejudice may result from the unregulated lodging of detainers. These include (1) harassment through the filing of detainers based on groundless charges or with no intention of bringing the prisoner to trial, *Ridgeway v. United States,* 558 F.2d 357, 361 (6th Cir.1977); and (2) damage to rehabilitation efforts, *Christian, supra,* 394 A.2d at 34, including adverse effects on the custodial state's decisions about parole and pre-release programs. L.W. Abramson, *Criminal Detainers,* at 32–34 (1979).

More specifically, as to rehabilitation, an inmate against whom a detainer has been lodged is usually assigned a higher security classification, based on the existence of the detainer alone and not upon an ad hoc determination of the likelihood that the inmate is a greater escape risk or is guilty of the charge. *Id.* at 29–30. An inmate under the onus of a detainer, therefore, may be prevented from participating in rehabilitation programs, may be denied the opportunity to attain certain positions at the prison (*i.e.* trusty status or preferred prison jobs), and may be unable to accumulate good time credits. *Id.* at 30–31. Additionally, the psychological effects of a detainer may be overwhelming. *Id.* at 31–32; *see Smith v. Hooey,* 393 U.S. 374, 379, 89 S.Ct. 575, 577, 21 L.Ed.2d 607 (1969). Anxiety, depression, skepticism, and hopelessness about his uncertain prospects may drain the inmate of any inclination toward self-improvement.

L.W. Abramson, *supra,* at 31–32; *see generally Mauro, supra,* 436 U.S. at 359–60, 98 S.Ct. at 1846–47. This court accordingly has characterized the IAD as "a long-overdue piece of legislation designed to correct untenable abuses by government officials in the use of detainers." *Christian, supra,* 394 A.2d at 38–39.

On this record, however, appellant has not demonstrated that he suffered any of these ill effects. The charges in question were well-founded; appellant was convicted of the offenses. Appellant, moreover, has not argued that the arrest warrant in his prison file in any way affected his prison treatment, including prospects for rehabilitation, in South Carolina, even though some prison officials there may have considered the warrant a detainer. Nor was appellant eligible for parole or pre-release programs in South Carolina during the pendency of the District's charges.

Here, the delay in prosecution, from the time appellant began serving his South Carolina sentence until trial began in the District of Columbia, was 14 months. Appellant's status as a prison inmate may have made this delay more onerous than it otherwise would have been; but the IAD does not provide for relief whenever charges are pending against a prison inmate. *See Newman, supra,* 367 A.2d at 202. The delay alone, then, does not show that the warrant in appellant's file was prejudicial.

In summary, because the District of Columbia government did not intend the warrant in appellant's South Carolina prison file to serve as a detainer, and because there is no record evidence that the warrant prejudiced appellant in any of the ways that the IAD was designed to prevent, I conclude that no detainer was lodged against appellant in South Carolina, within the meaning of the IAD. Thus, I would affirm his convictions.

---

**2.** While the acts of police officers must be imputed to the government, the action of the police officer here in leaving a "courtesy" copy of the warrant for the South Carolina detective, five months before appellant was tried and sentenced in South Carolina, does not in itself show intent to file a detainer.

## IV.

Assuming, without deciding, that the District's warrant was a detainer, the majority concludes, "upon the unusual facts in the instant case," that " 'the burden of substantial compliance' with the IAD fell upon appellant and that ... he did not carry such burden." *Ante* at 320, *quoting McBride v. United States,* 393 A.2d 123, 128–29 (D.C.1978). I emphatically disagree. Because my colleagues seriously misapply the principles of *McBride* and create precedent that may distort this court's proper application of the IAD in the future, I feel obliged to elaborate my disagreement. To this end, it is important to set forth excerpts from that decision at length.

In *McBride, supra,* 393 A.2d at 126–29, we said:

> On March 17, 1976, while incarcerated in Maryland in the Prince George's County Detention Center, [appellant] James Thomas received written notice that "a Detainer ha[d] been placed against him by [the] U.S. Marshal." The warrant number and charge (assault with intent to kill while armed) were specified, and appellant was further "advised that any questions in reference to the above case(s) should be sent to the prosecuting attorney of the issuing jurisdiction." Two weeks later, on April 1, 1976, during a probation revocation hearing in Prince George's County Circuit Court, appellant asked the judge about "squaring away" the District of Columbia detainer. The judge suggested that he write to the District about his desire to be tried, whereupon the District of Columbia officials would "be put under certain constraints" to remove him to the District for trial. Subsequently, around April 6, appellant sent such a request to his brother, apparently intending that it be routed to an attorney and then to the proper District authority. The fate of the letter is not known. On June 16, 1976, Thomas was brought to the District of Columbia for trial on another charge by means of a writ of habeas corpus *ad prosequendum.*

Apparently, he remained until completion of the present case. [Footnote omitted.]

\* \* \* \* \* \*

> The written notice furnished by Maryland was not itself sufficient to meet this [IAD Art. III] § (c) requirement. Appellant, however, does not maintain that this deficiency in the written notice alone triggered the running of the 180 days. He asserts, rather, that Maryland did not sufficiently inform him of his IAD rights at any other time, and thus that his oral request for information in court on April 1, coupled with the letter to his brother, was enough to achieve "substantial compliance" with his own statutory obligation to deliver "his request for a final disposition" so as to invoke his right to trial within 180 days. Because trial began in the District of Columbia on December 15, 1976, more than 180 days after his April 1 inquiry, appellant contends that the 180-day period had expired, and that the indictment accordingly should have been dismissed. [Footnote omitted.]

\* \* \* \* \* \*

> The IAD is intended to be "liberally construed so as to effectuate its purposes." D.C.Code 1973, § 24–701, IAD, Article IX. *See Commonwealth v. Merlo,* 242 Pa.Super. 517, 364 A.2d 391 (1976). Thus, we agree with the states which hold that "substantial compliance" should be the test. There is, of course, a circular path from the prosecuting jurisdiction (lodges the detainer) to the custodial jurisdiction (informs prisoner of IAD rights) to the prisoner (notifies prosecuting jurisdiction through official of custodial jurisdiction, who supplies certificate of conviction) back to the prosecuting jurisdiction (must prosecute within 180 days of notice). Once a detainer has been lodged, therefore, a failure to comply carefully with the statute at any point thereafter could cause the speedy trial scheme to fail. We agree with the Supreme Court of Delaware: "The burden of compliance with the procedural requirements of the IAD rests upon the party states and their

agents; the prisoner, who is to benefit from this statute, is not to be held accountable for official administrative errors which deprive him of that benefit." *Pittman v. State*, 301 A.2d 509, 514 (Del. 1973). On the other hand, the "substantial compliance" concept puts a responsibility on the prisoner as well, once he becomes aware that IAD-type rights exist; the custodial state's failure to comply absolutely with its obligations will not necessarily be determinative if the prisoner has sufficient information on which to base an assertion of IAD rights. After reviewing the IAD mechanism, as well as all the interests involved, we conclude that the question of "substantial compliance" by a prisoner should turn on whether he or she has done everything that the IAD jurisdictions could reasonably expect, given their own degree of compliance with a scheme which they have the principal responsibility to implement.

\* \* \* \* \* \*

We have assessed the situation here and conclude that appellant received sufficient notice from Maryland for the burden of substantial compliance to fall upon him—a burden he failed to carry. Appellant received a written notice about the detainer, including a direction to address questions "to the prosecuting attorney of the issuing jurisdiction." Just two weeks later, a Maryland court advised appellant to write to the District of Columbia, in order to put it under "constraints" in resolving the charge. This notice, like the earlier written notice of the detainer, did not constitute strict compliance with the notification provision, Article III(c). Nevertheless, we believe that it was sufficient and done "promptly" enough, *id.*, to impose the burden of substantial compliance on appellant. He was obliged at that point to direct a written request to the District, in order to trigger the 180-day speedy trial period. [Footnote omitted.]

In contrast, in the present case, although appellant was aware of the District of Columbia warrant and thus of the charges pending against him, no one in the custodial jurisdiction, South Carolina, ever informed him of his IAD rights or more generally, as in *McBride, supra,* told him that "a Detainer ha[d] been placed against him" and "that any questions in reference to the above case(s) should be sent to the prosecuting attorney of the issuing jurisdiction." *Id.* at 126.

My colleagues acknowledge that "South Carolina officials did not inform [appellant] that he had a right to . . . request" that the District dispose of such charges. *Ante* at 320. And yet, despite *McBride*'s teaching that a prisoner must have "sufficient information on which to base an assertion of IAD rights," *id.* at 128, my colleagues shift the burden of substantial compliance to appellant—as though South Carolina did sufficiently inform him of his IAD rights—simply because of appellant's knowledge of the "source and contents of the warrant for his arrest," *ante* at 319, his admission that he committed "two of the three crimes charged against him" in the District of Columbia, *ante* at 320, and his "significant experience with the workings of the criminal justice system, *viz.,* arrest and then conviction and sentence by the court in South Carolina." *Ante* at 320.

I am at a loss to understand how the latter two circumstances are even relevant, and in any event how the three circumstances are enough, to warrant a conclusion that appellant should be deemed to know of IAD speedy trial rights attributable to a warrant/detainer. As I see it, my colleagues are sweeping the stringent "substantial compliance" requirements of *McBride, supra,* under the rug to reach for a result that the facts simply do not support.

But that does not end the matter. Although the IAD requires dismissal of the indictment if the prosecuting/receiving jurisdiction misses the 180-day trial deadline, D.C.Code § 24–701, Art. V(c) (1981), the

IAD is silent as to the sanction when the custodial/sending jurisdiction fails promptly to inform an inmate of IAD rights. *McBride, supra,* 393 A.2d at 128 n. 4.

Given my colleagues' premise that a detainer has been lodged, and given that the record clearly demonstrates the custodial jurisdiction, South Carolina, did not inform appellant of his IAD rights (and there is no evidence that appellant otherwise knew them), I believe that my colleagues are obliged on this record to consider—squarely— what sanction, if any, is required. This is a critical and troublesome issue on which the highest state courts have reached dramatically conflicting results. For example, in *State v. Clark,* 222 Kan. 65, 68, 563 P.2d 1028, 1032 (1977), the Supreme Court of Kansas affirmed a conviction when prison officials of another jurisdiction "fail[ed] to notify a prisoner of an outstanding detainer," since a "legislative enactment providing for a speedy trial, with no sanction for failure to comply with the mandate, is generally construed as directory," and in "the absence of a specific sanction, the right to a speedy trial must be gauged from a consti-tutional viewpoint." In sharp contrast, the Supreme Court of Colorado dismissed an indictment on IAD Article III(c) grounds, holding that "when officials of the state imprisoning the defendant do not comply with the mandates of Article III(c), the indictments, informations, or charges against the defendant pending in the jurisdiction from which the detainer emanates shall be dismissed with prejudice." *Romans v. Dist. Ct. In and For Eighth Jud. Dist.,* Colo., 633 P.2d 477, 481 (1981) (en banc).

## VI.

Because I conclude that no detainer was lodged against appellant, I vote to affirm, despite my disagreement with the majority analysis.