**Ernest E. TUCKER, Appellant,**

v.

**UNITED STATES, Appellee.**

**No. 85–964.**

District of Columbia Court of Appeals.

Argued March 8, 1989.
Decided Jan. 24, 1990.

Robert W. Mance, Washington, D.C., appointed by this court, for appellant.

Edith S. Marshall, Asst. U.S. Atty., with whom Jay B. Stephens, U.S. Atty., Michael W. Farrell, Asst. U.S. Atty., Washington, D.C., at the time the brief was filed, were on the brief, for appellee.

Before STEADMAN and SCHWELB, Associate Judges, and MACK,* Senior Judge.

STEADMAN, Associate Judge:

Appellant Tucker, convicted of second-degree murder and four other counts, seeks to have his convictions set aside and the indictment dismissed with prejudice on the ground of violation of his speedy trial rights under the Interstate Agreement on Detainers ("IAD"), D.C.Code § 24–701 *et seq.* (1989). Finding the IAD inapplicable to this case, we affirm.

I

Appellant Tucker and his codefendant Albert Smith were charged with various crimes arising from the strangling of Frank Cheek and the wounding by pistol of two others who had publicly voiced their

suspicions that Cheek had been murdered. Found guilty of murder in the second degree, D.C.Code § 22–2403 (1989), attempted robbery, *id.* § 22–2902, two counts of assault with intent to kill while armed, *id.* §§ 22–501, –3202(a), and one count of obstruction of justice, D.C.Code § 22–703 (repealed 1982), Tucker now appeals on the ground that the government failed to abide by the terms of Article III(a) of the IAD,[1] which reads in pertinent part as follows:

> Whenever a person has entered upon a term of imprisonment in a penal or correctional institution of a party State, and whenever during the continuance of the term of imprisonment there is pending in any other party State any untried indictment, information, or complaint *on the basis of which a detainer has been lodged against the prisoner,* he shall be brought to trial within one hundred and eighty days after he shall have caused to be delivered to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction written notice of the place of his imprisonment and his request for a final disposition to be made of the indictment, information, or complaint. . . .

D.C.Code § 24–701 art. III(a) (1989) (emphasis added). Appellant contends that the trial court erred in denying his pretrial motion to dismiss his indictment for noncompliance with the speedy trial provisions of the Act, and that his convictions should accordingly be reversed.[2]

Tucker and Smith committed the murder and assaults in late September and early October of 1979. Arrest warrants for those crimes were issued in late October 1979. Additionally, another warrant, a bench warrant arising from appellant's failure to appear for arraignment in a differ-

---

\* Judge Mack was an Associate Judge of this court at the time of argument. She was commissioned as a Senior Judge on December 1, 1989.

1. The IAD is a compact among 48 states, the District of Columbia, Puerto Rico, the Virgin Islands, and the United States, designed "to encourage the expeditious and orderly disposition of [outstanding] charges and determination of the proper status of any and all detainers based on untried indictments, informations, or complaints." D.C.Code § 24–701 art. I (1989).

2. We had occasion to consider the application of the IAD to Tucker's codefendant in *Smith v. United States,* 470 A.2d 315 (D.C.1983), *cert. denied,* 469 U.S. 1218, 105 S.Ct. 1201, 84 L.Ed.2d 344 (1985), in which we rejected Smith's IAD-based challenge to his convictions on the ground that he had not substantially complied with the requirements set forth in the Act. *Id.* at 320.

ent robbery case, was issued on October 17, 1979. On November 26, the two were arrested in South Carolina on unrelated armed robbery and kidnapping charges arising in that state. While processing them, the South Carolina authorities ran a National Crime Information Center computer check and learned of the existence of the outstanding District of Columbia warrants. On November 28 or 29, 1979, two District detectives, having been informed by South Carolina police that the two were in custody in Florence, South Carolina, went there to interview them. At the time, the South Carolina police requested copies of the arrest warrants for Tucker and Smith. In response to that request, "as a matter of professional courtesy," the District officers left copies of the warrants with a detective of the Florence police department.

Although the District detectives did not give the warrants for Tucker's arrest to anyone other than local police, the warrants were ultimately transferred from Florence County to the South Carolina Department of Corrections. The custodian of the appellant's inmate records testified that he would treat outstanding arrest warrants such as those in appellant's file as detainers.[3] However, in September 1980, an Assistant United States Attorney involved in the grand jury investigation of appellant's case [4] phoned both the clerk's office in the Florence, South Carolina courthouse and state prison authorities in Columbia, South Carolina, to ask whether there were any detainers on file for appellant. He was told by officials from both institutions that there were no detainers lodged against appellant from the District of Columbia.

Appellant asserts that the existence of the warrants in his South Carolina file satisfies the "detainer" requirement of the Act, a point which we expressly assumed without deciding in *Smith, supra* note 2, 470 A.2d at 319. Pointing to a series of letters which he contends constitutes a proper "request" under the Act, appellant further asserts that, unlike his codefendant Smith, *see supra* note 2, he did substantially comply with the requirements of the IAD. Because we conclude that the arrest warrants left with the Florence, South Carolina police were not detainers under the IAD, we need not reach the question of whether appellant substantially complied with the provisions of the Act.

## II

Prosecutors file detainers to secure the availability for trial of individuals incarcerated in another jurisdiction. Although the IAD itself contains no definition of the term detainer, the Supreme Court has explained that a detainer " 'is a notification filed with the institution in which a prisoner is serving a sentence, advising that he is wanted to face pending criminal charges in another jurisdiction.' " *United States v. Mauro*, 436 U.S. 340, 359, 98 S.Ct. 1834, 1846, 56 L.Ed.2d 329 (1978) (citing Congressional reports). More specifically, the Court has stated that for IAD purposes, a detainer is "a request filed by a criminal justice agency with the institution in which a prisoner is incarcerated, asking the institution either to hold the prisoner for the agency or to notify the agency when release of the prisoner is imminent." *Carchman v. Nash*, 473 U.S. 716, 719, 105 S.Ct.

---

**3.** However, the custodian of records also testified that there was no indication that appellant's security classification, treatment program, or parole eligibility date were at all affected by the presence of the warrants in his prison records.

Although appellant asserted that he would not be paroled on his due date unless the District of Columbia charges were liquidated, the custodian of records made clear that appellant would not even be eligible for parole on his 21-year South Carolina sentence until he had served seven years. Appellant was removed to the District after only three months in prison in South Carolina. Moreover, he was tried and sen-

tenced in both this case and the unrelated robbery case within 18 months of his conviction and sentencing in the South Carolina case. As such, the outstanding District of Columbia charges could not have affected appellant's South Carolina parole eligibility.

**4.** The Assistant United States Attorney testified that his investigation concerned case number F4636–80, the murder and assault with intent to kill case from which this appeal arises. He was not involved in the investigation of the unrelated robbery case in relation to which a bench warrant for appellant's arrest was issued.

3401, 3403, 87 L.Ed.2d 516 (1985). *See also Smith, supra* note 2, 470 A.2d at 322 (Ferren, J., concurring) ("a detainer requests the 'custodial' or 'sending' jurisdiction to notify the 'prosecuting' or 'receiving' jurisdiction before the inmate's release, and to hold him for delivery to the prosecuting/receiving jurisdiction") (citations omitted). Additionally, the IAD on its own terms pertains only to detainers based on an "untried indictment, information, or complaint." D.C.Code § 24–701 art. III(a) (1989).

■ Under this definition, an arrest warrant will serve as a detainer within the purview of the IAD if: 1) it is based on an untried information, indictment, or complaint; 2) it is filed by a criminal justice agency; 3) it is filed directly with the facility where a prisoner is incarcerated; 4) it notifies prison officials that a prisoner is wanted to face pending charges; and 5) it asks the institution where the prisoner is incarcerated either to hold the prisoner at the conclusion the prisoner's sentence, or to notify agency officials when the prisoner's release is imminent. Where all five of these criteria are satisfied, an arrest warrant is plainly "lodged" as a detainer, and the provisions of the IAD come into play.[5]

■ In this case, however, the warrants for appellant's arrest did not meet at least two of these criteria—they were not filed with prison officials by District of Columbia officials, and they were not accompanied by a request to hold appellant or provide notification of his impending release.[6]

---

**5.** Other cases, decided in this and other jurisdictions, provide some indication of circumstances in which arrest warrants do constitute detainers. In *Baylor v. United States,* 500 A.2d 1012, 1013 (D.C.1985), a detainer was filed "on the basis of" an outstanding arrest warrant. Unlike the present case, though, the warrant itself was attached to a separate detainer form, *id.,* indicating the prosecutor's intent to lodge the warrant as a detainer. In *Harper v. State,* 420 So.2d 835, 837 (Ala.Crim.App.1982), a prosecutor filed a detainer in the form of an arrest warrant. However, the warrant in that case was accompanied by a letter asking the officials in the sending state to "lodge this Warrant as our detainer against" the prisoner. *Id.* In *Walsh v. State ex rel. Eyman,* 104 Ariz. 202, 203, 450 P.2d 392, 393 (1969), California officials filed a detainer on the basis of an arrest warrant, but unlike the District officials in this case, they specifically "requested that [the prisoners] be held" by the Arizona State Prison. *Id.* In *In re Shapiro,* 14 Cal.3d 711, 714, 537 P.2d 888, 889, 122 Cal.Rptr. 768, 769 (1975), an arrest warrant forwarded from California to a prison in Washington state was deemed a detainer. In that case, though, the warrant was accompanied by "a request that California authorities be notified 60 days prior to [the prisoner's] release." *Id.* In *Massey v. People,* 656 P.2d 658, 658 (Colo. 1982), an arrest warrant was sent to Colorado prison authorities with a "request" from Omaha authorities "to file a warrant for [the prisoner's] release as a detainer against his release from custody." Finally, in *State v. Black,* 594 S.W.2d 738, 739 (Tenn.Crim.App.1979), an arrest warrant served as a detainer where it was accompanied by an instruction to "place it against [the prisoner] as a detainer."

None of these cases squarely addressed the issue presented to us in this case. However, they do provide an indication that other jurisdictions also treat an arrest warrant as a lodged detainer only if it substantially satisfies the five-part definition outlined in the text.

**6.** It is not clear that both of the warrants satisfy the first requirement, namely, that they be based on an untried information, indictment, or complaint, as prescribed by the IAD. The arrest warrant for the murder charge was issued pursuant to Rule 4 of the District of Columbia Superior Court Rules of Criminal Procedure, which authorizes judges to issue an arrest warrant on the basis of a "complaint" or an "affidavit filed with [a] complaint." Super.Ct.Crim.R. 4 (1989). Rule 3 defines a complaint as a "written statement of the essential facts constituting the offense charged." Super.Ct.Crim.R. 3 (1989). *See also* D.C.Code § 23–561(a)(1) (1989) (providing that a judge may issue an arrest warrant "upon a sworn complaint which states facts constituting an offense"). As such, the murder arrest warrant left with the Florence, South Carolina police was based on an untried complaint. However, the other warrant, a bench warrant arising from appellant's failure to appear in another case, was not itself based on such an "untried complaint." Instead, it was issued on the basis of a judicial finding that appellant did not appear at his arraignment. The holding of at least one court in an analogous context suggests that such a warrant may not trigger IAD treatment. *See Commonwealth v. Monroe,* 580 S.W.2d 722, 723 (Ky.Ct.App. 1979) (prison warden's warrant providing notice of, but not charging crime of, escape by a prisoner is not a detainer covered by the IAD).

Because we decide that both the murder arrest warrant and the bench warrant do not comport with the definition of a detainer for other reasons, we do not reach the question of whether a bench warrant for failure to appear is based on a notification of an untried information, indictment, or complaint under the IAD.

It is therefore unclear whether the warrants here were lodged as detainers.[7] To resolve the question, we employ the "functional analysis" approach developed by Judge Ferren in his *Smith* concurrence. This requires us to focus on two issues: (1) whether District of Columbia officials intended the warrant to serve as a detainer; and (2) whether the appellant suffered any prejudice during his incarceration in South Carolina[8] on account of the warrant. *Smith, supra* note 2, 470 A.2d at 322 (Ferren, J., concurring).

### A. Intent

■ The record in this case establishes that District officials did not intend to lodge a detainer against appellant when they left two arrest warrants with Florence, South Carolina police. For one, the warrants for appellant's arrest were left with the local police at the request of South Carolina, not District, officials, and as a matter of courtesy. Additionally, unlike an ordinary detainer, the warrants were given to police investigating a crime, and not correctional officials. Appellant was not even tried and sentenced on the South Carolina charges for another five months; at that time, South Carolina officials apparently placed the warrants in appellant's prison files on their own initiative. Nor did either warrant, "unlike a typical detainer," request that "South Carolina notify the District of Columbia before releasing appellant or hold him for the District upon completion of his sentence." *Smith, supra* note 2, 470 A.2d at 322 (Ferren, J., concurring).[9] We accordingly affirm the trial court's finding that "it does not appear this

7. In *Bean v. United States*, 409 A.2d 1064 (D.C. 1979), the court stated that an arrest warrant which "was lodged with" the officials of another state, *id.* at 1065, was a detainer. *Id.* at 1066. In the opinion, the *Bean* court in dicta referred to a portion of the Supreme Court's opinion in *United States v. Mauro, supra,* which "indicates" that "service of an arrest warrant is a detainer." *Bean, supra,* 409 A.2d at 1066. Neither opinion is a sweeping endorsement of the view that arrest warrants constitute detainers under all circumstances. They both involved scenarios where the particular arrest warrant in question seemed intended to serve as a detainer. In *Bean,* the defendant had engaged in an armed robbery in the District and fled in a high-speed chase into Maryland, where he was arrested. A District of Columbia warrant for his arrest was "lodged with Prince George's County officials." *Id.* at 1065. The defendant waived extradition and was brought to the District of Columbia for presentment and detention. In *Mauro,* the federal law enforcement officials had "lodged the federal bank robbery warrant as a detainer against [the prisoner] with the state prison authorities." *Mauro, supra,* 436 U.S. at 346, 98 S.Ct. at 1840. Thus, we agree with the court's observation in *Smith,* made after referring to the *Bean* citation of *Mauro,* that "there is a question whether *Mauro* stands for the proposition that *anytime* an arrest warrant comes into the hands of officials in another state who may be holding a defendant this occurrence *alone* constitutes the lodging of a detainer within the meaning of the IAD." *Smith, supra* note 2, 470 A.2d at 319 n. 3 (emphasis in original). The court then went on to mention the specific finding of the trial court that "leaving the warrants under these circumstances was *not* 'an attempt' to lodge a detainer." *Id.* (emphasis in original). The subsequent and seemingly contradictory al-

lusion to a broad reading of the *Bean* case, see *id.,* 470 A.2d at 320 n.\*, was made solely in commenting on Judge Ferren's concurring opinion.

8. In undertaking this functional analysis, we are mindful of this court's opinion in *Felix v. United States,* 508 A.2d 101, 105 (D.C.1986), where we held that "active enrollment in a specific rehabilitation program is not a stated prerequisite to invocation of [the IAD] Act's protections." That case held that where a detainer has been unambiguously lodged, *see id.* at 102, a prisoner need not show that the detainer has had any "detrimental effects" on his rehabilitation program for the IAD to apply. *Id.* at 105–06. We hold here only that a showing of prejudice to a prisoner's rehabilitation program is required in those instances where a prisoner alleges that the IAD applies to a document which the government did not intend to lodge as a detainer.

For those cases where the IAD does apply and is violated, however, we leave open the question of whether a prisoner must show prejudice as a prerequisite to dismissal of the indictment against him. *See Malone v. United States,* 482 A.2d 768, 772 (D.C.1984) (refusing to dismiss indictment for a minor, unintentional IAD violation where appellant did not show that the violation affected his rehabilitation).

9. Moreover, there is no evidence that prosecuting officials sought to circumvent the provisions of the IAD through the use of the arrest warrants instead of a detainer. The prosecuting United States attorney did not know that the arrest warrants were in appellant's prison file; indeed, on inquiring, he was told that there were no detainers against appellant. *See supra* note 4 and accompanying text.

was an attempt to lodge what could be construed as a detainer against the defendant."

## B. *Prejudice*

Although District officials did not intend to file a detainer against appellant, South Carolina prison officials nevertheless gained notice of the charges pending in the District of Columbia through the acts of District police officers. As a result, under a functional analysis of the arrest warrants, we must consider whether appellant suffered any prejudice as a result of the presence of arrest warrants in his prison file. *See Smith, supra* note 2, 470 A.2d at 322 (Ferren, J., concurring) ("if the District did not intend to file a detainer, but appellant suffered the ill effects associated with detainers as a result of governmental conduct, then the warrant would have functioned as a detainer, and the IAD accordingly should apply").

The IAD aims to protect prisoners both from harassment resulting from the filing of detainers based on groundless charges, *id.* at 323 (Ferren, J., concurring), and from interference with the prisoner's rehabilitation program because of outstanding charges in another state. *See* L. ABRAMSON, CRIMINAL DETAINERS 29–34 (1979) (discussing the detrimental effects of detainers on treatment of prisoners); *see also Mauro, supra,* 436 U.S. at 359, 98 S.Ct. at 1846 (same). In this case, appellant suffered neither form of prejudice. His conviction of the offenses for which the warrants were issued demonstrates that the charges were well-founded. Moreover, appellant spent only three months in prison in South Carolina between his sentencing there and his removal to the District of Columbia to face the charges against him in this jurisdiction. Despite appellant's vague assertion that the outstanding warrant affected his eligibility for rehabilitative opportuni-

ties, the records of the South Carolina Department of Corrections did not indicate that the warrants in any way affected appellant's security classification in prison, the treatment program devised for him, or his eligibility for parole. *See supra* note 3.

Although the warrants for appellant's arrest provided South Carolina prison officials with notice of the District of Columbia charges pending against him, mere notice of pending criminal charges is insufficient to invoke the provisions of the IAD. *See United States v. Bamman,* 737 F.2d 413, 415–16 (4th Cir.1984) (the fact that state authorities came to have knowledge of a criminal investigation by another jurisdiction is not the "functional equivalent" of a detainer), *cert. denied,* 469 U.S. 1110, 105 S.Ct. 789, 83 L.Ed.2d 783 (1985); *State v. Bronkema,* 109 Idaho 211, 215, 706 P.2d 100, 104 (Ct.App 1985) (Washington state correctional officiais' knowledge of pending charges in Idaho "cannot be said to constitute a 'detainer'"). In the absence of intent to lodge a detainer, appellant must show that the existence of the warrant in his files prejudiced him in the ways the IAD seeks to prevent. *Smith, supra* note 2, 470 A.2d at 322 (Ferren, J., concurring). No such showing was made here.

Accordingly, we conclude that the warrants left with local South Carolina police by District detectives were not detainers within the meaning of the IAD, and reject appellant's contentions that the government failed to meet its obligations under D.C.Code § 24–701.[10]

*Affirmed.*

---

**10.** Appellant also asserts before us that he was denied effective assistance of counsel at trial because his lawyer failed to introduce evidence which appellant asserts would have contravened government evidence of his flight—specifically an Internal Revenue Service document which allegedly would have shown appellant's pres-

ence in the District of Columbia after the occurrence of the crimes of which appellant was convicted. This contention is meritless. Appellant was convicted after a twelve-day trial on the basis of strong evidence, including eyewitness testimony. Thus, even if appellant's trial counsel had sought to introduce evidence that

**In re A.W.**

the appellant was present in the District of Columbia at some point after commission of the crimes underlying this appeal, but before his ultimate arrest in South Carolina, we see no

"reasonable probability that ... the result of the proceeding would have been different." *Strickland v. Washington,* 466 U.S. 668, 694, 104 S.Ct. 2052, 2068, 80 L.Ed.2d 674 (1984).