The PEOPLE of the State of Colorado, Plaintiff–Appellee,

v.

Wade F. THORNTON, Defendant–Appellant.

No. 92CA1200.

Colorado Court of Appeals, Div. III.

July 14, 1994.

Rehearing Denied Aug. 11, 1994.

Certiorari Denied March 6, 1995.

Gale A. Norton, Atty. Gen., Stephen K. ErkenBrack, C. Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., Clement P. Engle, Sr. Asst. Atty. Gen., Denver, for plaintiff-appellee.

David F. Vela, State Public Defender, Scott Evans, Deputy State Public Defender, Beth L. Krulewitch, Deputy State Public Defender, Denver, for defendant-appellant.

Opinion by Judge PLANK.

Defendant, Wade F. Thornton, appeals a judgment of conviction entered following a trial to the court in which he was found guilty of escape. Specifically, defendant challenges a pretrial order denying his motion to dismiss the charge based on a violation of his right to a speedy trial under the Interstate Agreement on Detainers (IAD). We affirm.

In 1988, while serving concurrent sentences for four felony convictions, defendant failed to return to the community corrections facility in which he was housed. Defendant was charged with one count of escape, and a warrant for his arrest was issued.

Thereafter, in June 1989, defendant was arrested in California on charges unrelated to the Colorado offenses and was sentenced to two years in the California Department of Corrections (CDC) on the California charges. At the time of his arrest in California, defendant was using the name William Elias Chaney.

Shortly after his arrest, the Adams County Sheriff's Department was notified by the FBI that the fingerprints of a prisoner in California known in that state as William Chaney matched the fingerprints of the escaped Colorado prisoner known as Wade Thornton. Accordingly, the warrants clerk in· the Adams County Sheriff's Department contacted officials in California and notified them that Chaney was wanted in Colorado under the name of Wade Thornton. He requested that a hold be placed on the prisoner for the escape charge.

On August 30, 1989, after the defendant had been sentenced in California, the warrants clerk in Adams County again contacted the CDC and requested that a hold or detainer be placed on the defendant. Officials from the CDC notified defendant of the hold and explained the procedures he needed to follow if he wished to respond to the hold and request a speedy disposition of the charge under the IAD. Defendant was supplied with a form used in California in order to request speedy disposition of the charge under the IAD, which he completed and returned to the prison authorities. In this form he used the name William Chaney.

The form was apparently sent to the district court and the Adams County District Attorney's Office in early October of 1989. An assistant district attorney then sent a letter to the defendant in California, acknowledging receipt of the California form and noting that the case number used in the form was one assigned to a defendant in Colorado with the name of Wade Thornton.

The district attorney's letter stated that if the person completing the California form was not Wade Thornton, he did not need to request a speedy trial for the escape charge. It stated further that, if the person in California known as Chaney was Thornton, then the original request for a speedy trial was inadequate and he must complete the appropriate forms pursuant to the Colorado IAD statute in order to request speedy disposition of the charges. A copy of the Colorado statute was enclosed with the letter, and defendant was instructed that the appropriate forms could be obtained from the institutional case manager.

Defendant subsequently testified that, based on the advice of his California case manager that no further action was required on his part, he took no further action in this matter.

Between September of 1989 and February of 1990, the warrants clerk for Adams County communicated with officials in California on several occasions about the status of defendant's incarceration, and in February of 1990, the Colorado authorities were provided

with defendant's sentencing and release date information. In May of 1990, defendant filed, *pro se,* a motion to dismiss the escape charge, arguing that dismissal was required under the IAD as a result of the failure to bring him to trial within 180 days after his request for speedy disposition of the charge. In June of 1990, defendant filed, at the suggestion of his case manager in California, a set of standardized disposition of detainer forms.

Defendant was released from the CDC the following month and was immediately transported to Adams County to be tried on the escape charge. A pretrial hearing was held on his motion for dismissal of the charge based on the failure to comply with the terms of the IAD. The court subsequently denied the motion, concluding that defendant's failure to clarify the issue with respect to his name resulted in less than "colorable compliance" with the terms of the IAD and that, accordingly, defendant could not rely on the statute in arguing he was denied his right to a speedy trial. The conviction here at issue followed.

■ Defendant contends the court erred in denying his motion to dismiss based on the speedy trial provisions of the IAD. He maintains that his request for speedy disposition of the charge substantially complied with the provisions of the IAD. He further argues that because his request for a speedy trial specifically identified the Colorado case number and warrant number of the outstanding charge in Adams County, the authorities were well aware of his identity and he was not required to respond to the district attorney's letter. We disagree.

Section 24–60–501, C.R.S. (1988 Repl.Vol. 10B), the IAD, contains provisions allowing a defendant to assert his right to a speedy trial when he is confined in another state but facing an outstanding criminal charge in Colorado. Section 24–60–501, Article III(a), C.R.S. (1988 Repl.Vol. 10B) requires the prosecution to try a prisoner on the Colorado charge within 180 days after receipt of the prisoner's request for final disposition of the charge, unless the court having jurisdiction of the matter grants a necessary or reasonable continuance.

■ The purpose of the IAD is to encourage the expeditious disposition of charges and determine the proper status of detainers based on untried indictments so that uncertainty about a prisoner's status will be dispelled and rehabilitation and treatment can proceed unhindered. *People v. Newton,* 764 P.2d 1182 (Colo.1988).

■ In order to derive benefit from the provisions of the IAD, a prisoner must deliver to the appropriate official of the institution in which he or she is housed a written notice that a final disposition be made of the indictment or complaint pending against him or her in another jurisdiction. It is then the responsibility of the prison official to forward the prisoner's request for a final disposition to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction. The prisoner's request must be accompanied by a certificate of the appropriate official having custody of the prisoner stating the term of commitment under which the prisoner is being held, the time already served, the time remaining to be served, the amount of good time earned, and the parole eligibility of the prisoner. Section 24–60–501, Article III, C.R.S. (1988 Repl.Vol. 10B).

■ Once the speedy trial period has been activated by proper notification under the IAD, the burden of compliance is on the district attorney and the court. Failure to bring the prisoner to trial within 180 days will result in dismissal of the pending charge. *People v. Newton, supra.*

Older cases suggest that strict compliance with the terms of the IAD is mandatory in order to invoke its protections. *See People v. Jacobs,* 198 Colo. 75, 596 P.2d 1187 (1979); *People v. Quintana,* 682 P.2d 1226 (Colo.App. 1984). More recent decisions, however, suggest that while strict compliance may not be required in every case, substantial compliance is required for a prisoner to invoke his or her rights. *See People v. Trancoso,* 776 P.2d 374 (Colo.1989).

■ We initially reject the People's arguments that defendant's request for prompt disposition was defective because it did not contain a certificate of inmate status required

by the IAD and did not identify in the body of the document the information about prisoner status required by the IAD.

Prison authorities, and not the prisoner, are the individuals responsible for forwarding a prisoner's request for prompt disposition to another jurisdiction and for seeing that the information on inmate status accompanies the request. Section 24–60–501, Article III(b), C.R.S. (1988 Repl.Vol. 8B); *see Rockmore v. State*, 21 Ariz.App. 388, 519 P.2d 877 (1974) (Article III places the burden of preparing and forwarding the certificate of inmate status on the officials having custody of the prisoner, and relief should not be denied a prisoner when officials fail to carry out their obligations).

We also disagree with the People that defendant's initial request for the speedy disposition of the charge was too vague and indefinite to comply with the provisions of the IAD.

Although the form given defendant by the officials at the CDC is not a standardized form used in a number of jurisdictions or the same form used in Colorado to invoke the protections of the IAD, the form does refer to the California statute governing the IAD in that state. Moreover, it is evident from the district attorney's letter to the defendant that the district attorney recognized that by submitting this form defendant was attempting to exercise his rights under the IAD. Hence, defendant's use of this form is clearly distinguishable from the factual situation in *People v. Campbell*, 742 P.2d 302 (Colo.1987), in which the defendant's request made no mention of the statute or the statutory citation.

We find no fault with defendant's actions up until the point he received the letter from the district attorney requesting clarification of the name used on the request for speedy disposition. At that point, however, when clearly informed of the district attorney's confusion, defendant chose to ignore the request to clarify the matter. We conclude that a minimum requirement of Article III is proper identification of the prisoner so that the state in which the indictment is pending can proceed to bring the prisoner back for trial. Accordingly, by failing to identify himself properly to the district attorney when it became clear that there was confusion over this issue, defendant failed substantially to comply with the terms of the IAD.

In questions of statutory interpretation, our task is to ascertain and give effect to the intent of the General Assembly. The statutory scheme must be read and considered as a whole to give consistent, harmonious, and sensible effect to all its parts. *Charnes v. Boom*, 766 P.2d 665 (Colo.1988). In determining the intent of the General Assembly, it is useful to consider the plain language of the statute, *People v. District Court*, 713 P.2d 918 (Colo.1986), as well as the problem addressed by the legislation and the statutory remedy created to cure the problem. *Charnes v. Boom, supra.*

Section 24–60–501, Article I, C.R.S. (1988 Repl.Vol. 10B) explains that the purpose of the IAD is to secure speedy trials of persons already incarcerated in other jurisdictions so as to eliminate uncertainties which obstruct programs of prisoner treatment and rehabilitation. By necessity, therefore, those persons facing other charges must be properly identified so as to allow authorities to arrange their return to the state and schedule a speedy trial. The use of an alias when requesting speedy disposition under the IAD would only serve to frustrate the efficient administration of prisoner movement and speedy trials because additional steps would continually be required to determine whether the prisoner using different names in different states was the correct prisoner to be transported to another state.

Similarly, allowing a prisoner to use an alias in his or her IAD request without revealing the name by which he or she is known in the state where the charge is pending would create unnecessary confusion. It would allow a prisoner to make a demand for speedy disposition and then, after confusing the authorities and causing delays, claim that dismissal of the charges was mandated because he or she was not brought to trial within 180 days. This type of subterfuge was clearly not anticipated when the IAD was enacted. For these reasons, we con-

clude that the IAD implicitly requires that the proper identification of the prisoner be made known to the authorities in the state in which the outstanding charges are pending.

We do not agree with the defendant that, for purposes of the IAD, it is irrelevant whether Chaney and Thornton were the same person. It is defendant's position that any person burdened by a detainer while in prison has a right to speedy relief from that burden through the procedures of the IAD.

However, the Colorado authorities have no interest in bringing an individual to Colorado to face outstanding charges when that individual is not the person identified and wanted in the arrest warrant issued in connection with the outstanding charges. It would be a waste of resources for Colorado to transport prisoners back and forth when such prisoners have no connection to Colorado in the first place.

We find it significant that defendant took no further steps to clarify his own position by filling out a new set of forms or, at least, acknowledging that he was the same individual known in Colorado as Wade Thornton. Defendant's failure to act in response to the district attorney's letter could lead one to infer that he was intentionally ambushing the Colorado authorities. Although he wanted his demand for speedy disposition to be on file, he did not want to comply with a simple request that would put him in compliance with the terms of the IAD.

In this case defendant followed a course other than that required by the IAD when he refused to identify himself properly. He did not do so because of mistake or misguidance, but rather because he chose to ignore the provisions of the IAD when asked by authorities for clarification of his request for speedy disposition. It was important for the prosecutor to know whether the defendant was actually Thornton in order to proceed with proceedings under the IAD, and it would have taken very little effort on defendant's part to clarify the situation. Under these circumstances, we conclude that the trial court was justified in denying defendant's motion to dismiss.

 Finally, in view of the record before us, we are not persuaded by the defendant's claim that his inclusion of the Adams County case number and warrant number on his initial request for speedy disposition was sufficient for identification purposes and that the Colorado authorities in this case knew that Chaney and Thornton were the same person.

Although there was evidence that an Adams County Sheriff's Department official knew of the use of the alias, that individual stated that he had not informed the district attorney that Chaney and Thornton were the same man. The lack of knowledge in the prosecutor's office is made abundantly clear in the district attorney's letter to the prisoner in California requesting clarification of the name discrepancy. The district attorney made a good faith effort to ensure that the individual in California against whom the detainer was lodged was the same person wanted in Colorado on the escape charges.

Defendant's reliance on *People v. Lucero,* 623 P.2d 424 (Colo.App.1980) is misplaced, as the issue in that case concerned discovery and Crim.P. 16.

In June of 1990, approximately nine months after his first request, defendant submitted a new set of forms to the Colorado authorities requesting speedy disposition under the IAD. These forms identified defendant as "Chaney, William A., A.K.A. Thornton, Wade Felix." Defendant was brought to trial within 180 days of this June 1990 notification. Therefore, we conclude that there was no violation of the IAD in this case.

The judgment is affirmed.

JONES and PIERCE *, JJ., concur.

---

\* Sitting by assignment of the Chief Justice under provisions of the Colo. Const. art. VI, Sec. 5(3),