The PEOPLE of the State of Colorado, Plaintiff–Appellant,

v.

Gary Lee JOHNSON, Defendant–Appellee.

No. 95CA0854.

Colorado Court of Appeals, Div. V.

March 7, 1996.

Rehearing Denied May 2, 1996.

Certiorari Granted Oct. 21, 1996.

Robert S. Grant, District Attorney, Michael J. Milne, Senior Deputy District Attorney, Thomas J. Kresl, Deputy District Attorney, Brighton, for Plaintiff–Appellant.

David F. Vela, Colorado State Public Defender, Ellen K. Eggleston, Deputy State Public Defender, Denver, for Defendant–Appellee

Opinion by Judge ROTHENBERG.

The People appeal from a district court order dismissing a felony theft charge brought against the defendant. The court's dismissal of the charge was based on the People's failure to bring the defendant to trial within the limitation period outlined in the Interstate Agreement on Detainers (IAD), § 24–60–501, C.R.S. (1988 Repl.Vol. 10B). We reverse the order of dismissal and remand the cause for reinstatement of the felony theft charge.

I.

On November 17, 1992, defendant was charged in Adams County with one count of felony theft. Following the issuance of an arrest warrant, defendant was taken into custody and appeared in court on January 13, 1993. The case was then bound over for arraignment in April, but defendant failed to appear in court on the scheduled date. A bench warrant was issued for his arrest.

Approximately one year later, on April 14, 1994, the Adams County District Court received a letter from the defendant. The letter explained that defendant was incarcerated in California and that, as a result of the outstanding Colorado warrant for his arrest, he was unable to participate in vocational and education programs offered at the correctional facility. Defendant therefore asked the court to "release the hold" against him so that he could begin participating in the rehabilitative programs available to other inmates at the facility. The court sent a copy of defendant's letter to the defense attorney and the prosecutor assigned to defendant's case, advising counsel to take whatever action they deemed appropriate. Nothing in

the record suggests that either counsel took any action at that point.

On September 22, 1994, the district court clerk's office received a document prepared by the defendant entitled "Motion to Dismiss." In that document defendant alleged that the court was required to dismiss the felony theft charge against him because of the State's failure to comply with the limitation period set forth in the IAD. A copy of this document was forwarded to defense counsel and the prosecutor. In the cover letter accompanying the document, the court questioned whether, in view of the *pro se* motion to dismiss, defendant's earlier letter could be considered a request for speedy disposition of the charge. Again, the court directed counsel to take any action they deemed appropriate.

The district attorney sent a letter to the defendant expressing confusion about defendant's request regarding the pending case in Adams County. The district attorney pointed out that defendant's first letter to the court did no more than ask that the hold against him be released and contained no request that defendant be transported to Adams County in order for the case to be resolved. The district attorney stated that this was in direct conflict with the motion to dismiss for failure to prosecute the case within the statutory time frame and also told the defendant to contact the warden at the California facility at which he was housed if he wished to have his case expeditiously resolved pursuant to the IAD. There was no response from the defendant to this letter, and no further action on the case was taken.

In April of 1995, defendant appeared in Adams County District Court on the outstanding bench warrant. At that time the court held a hearing on defendant's *pro se* motion to dismiss that he had filed in September 1994. At the hearing, defense counsel did not argue that defendant's first letter to the court in April of 1994 was sufficient to trigger the provisions of the IAD. However, defense counsel did assert that the motion to dismiss substantially complied with the provisions of the IAD and triggered the running of the limitation period in the Act.

The court agreed, concluding that when the letter and the motion were considered together, they were sufficient to satisfy the requirements of the IAD and were tantamount to a request for speedy disposition of the charge under the Act. Accordingly, because defendant was not brought to trial within 180 days of his requests, the court granted the motion to dismiss and released the defendant from custody.

## II.

The People contend the trial court erred in concluding that defendant's letter and motion to dismiss satisfied the requirements of the IAD. We agree that these two documents were insufficient to trigger the running of the limitation period in the Act.

## A.

The IAD, which governs interstate detainer cases, was enacted in order to "encourage the expeditious and orderly disposition of [untried] charges and determination of the proper status of any and all detainers based on untried indictments, informations, or complaints." Section 24–60–501 Article I, C.R.S. (1988 Repl.Vol. 10B).

Article III of the IAD provides procedures by which a prisoner confined in a correctional facility outside Colorado must be promptly informed of the source and content of any detainer lodged against him or her. The prisoner must also be informed of his or her right to request final disposition of the charges on which the detainer is based. Section 24–60–501 Article III(c), C.R.S. (1988 Repl.Vol. 10B). If a prisoner makes a request for final disposition of the charges, he or she must be brought to trial within 180 days unless a continuance is granted for good cause shown. Section 24–60–501 Article III(a), C.R.S. (1988 Repl.Vol. 10B).

Specifically, § 24–60–501 Article III(a) provides that after a prisoner has been informed of any detainer lodged against him, the prisoner shall be brought to trial within 180 days "after he shall have caused to be delivered to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction written notice of the place of his

imprisonment and his request for a final disposition to be made of the indictment, information or complaint." That subsection goes on to state:

> The request of the prisoner shall be accompanied by a certificate of the appropriate official having custody of the prisoner, stating the term of commitment under which the prisoner is being held, the time already served, the time remaining to be served on the sentence, the amount of good time earned, the time of parole eligibility of the prisoner, and any decisions of the state parole agency relating to the prisoner.

### B.

■ The Uniform Mandatory Disposition of Detainers Act (UMDDA), which governs intrastate detainer cases, was enacted at the same time as the IAD. Although the UMDDA and the IAD apply to different situations, they reflect the same policy of assuring the speedy disposition of untried charges. *People v. Newton,* 764 P.2d 1182 (Colo.1988). Thus, the principles of one may be applied to the other unless the provisions conflict. *People v. Bost,* 770 P.2d 1209 (Colo.1989).

■ Several areas of the IAD conflict with the provisions of the UMDDA. One such distinction drawn by our courts between the two acts involves a prisoner's compliance with the provisions of the acts. The supreme court has determined that when a prisoner invokes his rights under the UMDDA, substantial compliance with the terms of the Act is sufficient. *See People v. Campbell,* 742 P.2d 302 (Colo.1987).

■ In contrast, the supreme court has held that, in cases involving interstate detainers, strict compliance with the provisions of the IAD is mandatory. *People v. Newton, supra; Hughes v. District Court,* 197 Colo. 396, 593 P.2d 702 (1979). *See People v. Helmstetter,* 914 P.2d 474 (Colo.App.1995); *People v. Quintana,* 682 P.2d 1226 (Colo.App. 1984).

### C.

■ Initially, we consider defendant's first letter dated April 1994 and conclude that it did not constitute a request for disposition of the Adams County charge. Although that letter acknowledged the detainer, it did not mention the IAD or speedy trial rights in general. It merely asked that the hold on the defendant be released so that he could pursue rehabilitative programs to aid him in obtaining an earlier release date. Thus, defendant's request is inconsistent with a demand for a speedy disposition of the felony theft charge. West's C.R.S.A. § 24–60–501.

■ We further conclude that, because defendant's September 1994 motion to dismiss was not in strict compliance with the provisions of the IAD, it did not trigger the provisions of the Act.

Although this document identified the Act and provided written notice of his place of imprisonment, it failed to comply with the remaining requirements of Article III. Defendant did not specifically request that a final disposition of the charge be made. In addition, his request was sent only to the court and not to the prosecutor.

Nor was defendant's motion to dismiss accompanied by a certificate from a California prison official stating the term of the commitment under which the defendant was being held, the time already served, the time remaining to be served, the amount of good time earned, and the defendant's parole eligibility date. In fact, nothing in the record suggests, and defendant does not assert, that a California prison official was asked to prepare this certificate.

Even when he was given the opportunity to comply fully with the provisions of the IAD, defendant failed to do so. As noted earlier, after receiving defendant's motion to dismiss, the prosecutor wrote to defendant and directed him to contact the warden of his correctional facility if he wished to obtain the proper documents in order to have his Adams County case resolved expeditiously. However, there is no suggestion in the record that defendant contacted a California prison official about this matter or filed any

additional documents with the Adams County court.

Defendant's reliance on *People v. Trancoso*, 776 P.2d 374 (Colo.1989) and *People v. Campbell, supra*, is misplaced. Both of those cases involved intrastate detainers, and are governed by the principles in the UMDDA, rather than by the IAD.

Defendant also asserts that *People v. Thornton*, 890 P.2d 158 (Colo.App.1994) suggests the proper standard is substantial compliance. We recognize the *Thornton* court held that defendant failed substantially to comply with the terms of the IAD by not identifying himself properly in response to a letter from the district attorney requesting clarification. However, the supreme court has required strict compliance with the terms of the IAD. *People v. Newton, supra; Hughes v. District Court, supra.* And, to the extent that *Thornton* is inconsistent, *Newton* and *Hughes* control.

We thus conclude that mandatory compliance is the proper standard to be applied in this case and we follow the divisions of this court also holding that strict compliance is required. *See People v. Helmstetter, supra* and *People v. Quintana, supra.*

In summary, here, defendant's actions were not in  Because those provisions are mandatory, defendant's requests that the hold be released and that the charge be dismissed were insufficient to invoke the protection of the Act. Therefore, the trial court erred in dismissing the felony theft charge.

The order is reversed and the cause is remanded with directions to reinstate the charge.

STERNBERG, C.J., and CASEBOLT, J., concur.