Gary Lee JOHNSON, Petitioner,

v.

The PEOPLE of the State of
Colorado, Respondent.

No. 96SC367.

Supreme Court of Colorado,
En Banc.

June 16, 1997.

Rehearing Denied July 14, 1997.

David F. Vela, Colorado State Public Defender, Ellen K. Eggleston, Deputy State Public Defender, Denver, for Petitioner.

Robert S. Grant, District Attorney, Seventeenth Judicial District, Michael J. Milne, Senior Deputy District Attorney, David R. Juarez, Deputy District Attorney, Brighton, for Respondent.

Justice HOBBS delivered the Opinion of the Court.

This case arises out of the Adams County District Court's dismissal of a felony theft charge brought against Gary Lee Johnson (Johnson). The dismissal was based upon the People's failure to bring Johnson to trial within the time limitation period contained in the Interstate Agreement on Detainers (the IAD), §§ 24–60–501, to –507, 10B C.R.S. (1988). The People filed an appeal with the court of appeals which reversed the district court's decision in *People v. Johnson*, 926 P.2d 126, 130 (Colo.App.1996). We granted certiorari to review whether the court of appeals was correct in determining that the IAD requires mandatory strict compliance with its terms.[1] We hold that strict compliance with the procedures set forth in the IAD is required in order to invoke its provisions for speedy trial and that Johnson failed to comply. Accordingly, we affirm the judg-

ment of the court of appeals which reinstated the felony theft charge against Johnson.

## I.

On November 17, 1992, Johnson was charged by information in county court with a class 4 felony count of theft pursuant to section 18–4–401(2)(c), 8B C.R.S. (1986 & 1996 Supp.). Johnson appeared in the county court on January 13, 1993, and the case was bound over for arraignment in the district court. Johnson failed to appear at the arraignment scheduled for April 20, 1993, and the district court issued a bench warrant for his arrest.

Nearly one year later, on April 14, 1994, the Adams County District Court received a letter from Johnson. The return address provided a post office box at the Department of Corrections in Chino, California. In this letter Johnson stated that:

> I am corresponding with you concerning a fugitive warrant issue [sic] in your county for me, Gary Lee Johnson, issued on or about 1992. I am sorry that I cannot provide you with a warrant number and exact date of execution.[2]
>
> I am currently incarcerated for a period of two (2) years and because of this outstanding out of state warrant I am not eligible for education and vocational programs. I am trying to rehabilitate myself and I wish to enter into a vocational program for this purpose.
>
> Please release the hold against me so I might enter into a program designed to aid me in my eventual release.

The district court forwarded copies of Johnson's letter to both the prosecutor and the public defender with a notation that they could take whatever action they deemed appropriate. Neither took any action.

1. The issue for certiorari was stated as follows: Whether the Court of Appeals erroneously construed the Interstate Agreement on Detainers, §§ 24–60–501 to –507, 10B C.R.S. (1988), to require mandatory strict compliance with its terms, in derogation of the holding reached by another division of the Court of Appeals in *People v. Thornton*, 890 P.2d 158 (Colo.App.1994).

2. Immediately below this typewritten sentence "# 93CR416" was handwritten in the same color ink with which Johnson signed the letter. It is unclear, however, whether this number was written by Johnson or interlineated later by someone who read the letter.

On September 22, 1994, the district court received a second document from Johnson. This document, dated September 19, 1994, was entitled "WARRANT CASE NO: 93–CR416 MOTION TO DISMISS." Johnson stated that he was moving to dismiss the charges against him on the ground that the state had failed to comply with the IAD because it had not tried him within 180 days. The proof of service accompanying the motion indicated that Johnson was incarcerated at Chuckwalla Valley State Prison in Blythe, California.

The district court forwarded this correspondence to both the prosecutor and the public defender and again invited them to take whatever action they deemed necessary. The prosecutor then responded by sending an October 5, 1994 letter to Johnson at the Chino address. In the letter, the prosecutor stated, in relevant part, that:

> Your April 14, 1994 letter asked to have us remove the hold on you which we placed as a result of your failure to appear in this case. At no time in that letter did you request that you be transported to Adams County in order for your case to be resolved. This seems in direct conflict with your request that the case be dismissed for violation of the [IAD], in that you have never filed a request for a speedy disposition pursuant to the detainer statute. If you would like to have your case resolved in Adams County, Colorado under the expedited procedures set forth in the [IAD] all you need to do is contact the warden of your facility in order to obtain the necessary documents and have them forwarded to my attention. Upon receipt of those documents we will begin processing your return to Colorado pursuant to the Act.

On November 1, 1994, the prosecutor sent the same letter to the Blythe address. Johnson did not respond to either letter.

On April 18, 1995, Johnson appeared before the district court in Colorado for arraignment and a hearing on his motion to dismiss the theft charge. At the hearing, the district court concluded that Johnson's letter and motion, taken together, constituted "a clear request for speedy disposition under that Detainer Act, and I find that the People have not complied with that request, and pursuant to 24–60–501 I'm dismissing this case with prejudice."

The prosecution appealed the dismissal. The court of appeals reversed the trial court's order, concluding that the IAD is mandatory and Johnson had not strictly complied with its provisions. We agree.

## II.

In 1969, the Colorado General Assembly adopted two acts addressing detainers: the IAD and the Uniform Mandatory Disposition of Detainers Act (the UMDDA), §§ 16–14–101 to –108, 8A C.R.S. (1986 & 1996 Supp.); *see* ch. 111, secs. 8–9, §§ 16–14–101 to –108 and §§ 24–60–501 to –507, 1969 Colo. Sess. Laws 286, 291–92. A detainer is "a request filed by a criminal justice agency with the institution in which a prisoner is incarcerated, asking that the prisoner be held for the agency, or that the agency be advised when the prisoner's release is imminent." *Fex v. Michigan,* 507 U.S. 43, 44, 113 S.Ct. 1085, 1087, 122 L.Ed.2d 406 (1993). Both the IAD and the UMDDA provide a means by which prisoners can seek the disposition of detainers. *See Moody v. Corsentino,* 843 P.2d 1355, 1367 (Colo.1993).

■ Specifically, the UMDDA governs *intrastate* detainers, which involve prisoners in the custody of the department of corrections in Colorado who have Colorado charges pending against them. *See* § 16–14–102(1), 8A C.R.S. (1986); *see also People v. Bost,* 770 P.2d 1209, 1214 (Colo.1989). In contrast, the IAD is "a congressionally sanctioned *interstate* compact within the Compact Clause, U.S. Const., Art. I, § 10, cl. 3, and thus is a federal law subject to federal construction." *Norton v. Parke,* 892 F.2d 476, 477 n. 2 (6th Cir.1989) (emphasis added). The IAD governs the disposition of *interstate* detainers, filed by a compact state that has charges pending against a person imprisoned in another compact state. *See* § 24–60–501, Art. I; *see also Moody,* 843 P.2d at 1368. A "state" is defined, for purposes of the compact, as "a state of the United States; the United States of America; a territory or possession of the United States; the District

of Columbia; the Commonwealth of Puerto Rico." § 24–60–501, Art. II(a).

■■■ Both the IAD and the UMDDA reflect the same policy of facilitating the speedy disposition of untried charges upon a proper request by an incarcerated person, *see Bost,* 770 P.2d at 1214, but our interpretation of the IAD, as a compact among states and the United States, should be guided by a policy of uniformity in applying its provisions to the transfer, transport, and trial of incarcerated persons between jurisdictions. We adopt the holding of federal appellate courts and of other state courts that a standard of strict compliance is applicable.

## A.

### *Strict Compliance with the IAD is Required*

The case before us involves implementation of the IAD. The purpose of the IAD is "to encourage the expeditious and orderly disposition of [pending] charges and determination of the proper status of any and all detainers based on untried indictments, information, or complaints." § 24–60–501, Art. I. The procedural requirements of the IAD are set forth in Article III of the act. Article III(a) [3] states in relevant part that the prisoner

shall be brought to trial within one hundred eighty days after *he shall have caused to be delivered to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction written notice of* the place of his imprisonment and *his request for a final disposition* to be made of the indictment, information or complaint .... The request of the prison-

er *shall be accompanied by a certificate of the appropriate official having custody of the prisoner.* (Emphasis added.)

Article III(b) mandates that the written notice and request for final disposition "shall be given or sent by the prisoner to the warden, commissioner of corrections, or other official having custody of him, who *shall* promptly forward it together with the certificate to the appropriate prosecuting official and court." (Emphasis added.)

Article III(d) requires the warden or custodial official to notify all appropriate prosecuting officials and courts "in the several jurisdictions within the state to which the prisoner's request for final disposition is being sent" of the proceedings being initiated by the prisoner.

■ Thus, the IAD mandates four procedural steps that must be followed by the prisoner, the custodial officials, and the state filing the detainer. First, the requesting state must lodge a detainer with the official in the party state that has custody of the prisoner. *See* § 24–60–501, Art. III(a); *People v. Newton,* 764 P.2d 1182, 1186 (Colo. 1988). Second, the custodial official is required to notify the prisoner of the source and contents of the detainer and his or her right to make a request for final disposition of the indictment, information, or complaint on which the detainer is based. *See* § 24–60–501, Art. III(c). Third, the prisoner must deliver to the warden or custodial official a written notice and request for final disposition. *See* § 24–60–501, Art. III(b). Fourth, the custodial official must forward the prisoner's request for a final disposition and a certification containing information regarding

---

**3.** Article III(a) of section 24–60–501, states in pertinent part that:

Whenever a person has entered upon a term of imprisonment in a penal or correctional institution of a party state, and whenever during the continuance of the term of imprisonment there is pending in any other party state any untried indictment, information, or complaint on the basis of which a detainer has been lodged against the prisoner, *he shall be brought to trial within one hundred eighty days after he shall have caused to be delivered to the prosecuting officer and the appropriate court of*

*the prosecuting officer's jurisdiction written notice of the place of his imprisonment and his request for a final disposition* to be made of the indictment, information or complaint .... The request of the prisoner *shall be accompanied by a certificate of the appropriate official having custody of the prisoner,* stating the term of commitment under which the prisoner is being held, the time already served, the time remaining to be served on the sentence, the amount of good time earned, the time of parole eligibility of the prisoner, and any decisions of the state parole agency relating to the prisoner. (Emphasis added.)

the prisoner's incarceration to the appropriate court and the prosecuting officer. *See* § 24–60–501, Art. III(a).

■ These procedures involve explicit notification to specified authorities that the incarcerated person is invoking the speedy disposition provisions of the IAD through the required certification. If these procedures are complied with, the prosecutor in the party state filing the detainer must try the prisoner within 180 days after receipt of the prisoner's request for final disposition, unless the court having jurisdiction grants a necessary or reasonable continuance. *See* § 24–60–501, Art. III(a). As a compact, the IAD is both state and federal law, *see Norton,* 892 F.2d at 477 n. 2, and federal decisions are instructive regarding the interpretation of its terms. A uniform standard of compliance and interpretation by the compact states reinforces the IAD's public policy intent.[4] Because interstate arrangements must be made for the transfer, transport, and trial of a prisoner in the custody of another jurisdiction, application of a strict compliance requirement promotes interstate reliance on the terms of the compact and lends stability to fulfilling its objectives.

Accordingly, federal appellate decisions hold that prisoners must strictly comply with the procedures set forth in the IAD. *See, e.g., United States v. Henson,* 945 F.2d 430, 436 (1st Cir.1991) ("As Henson failed to cause a written request for final disposition to be delivered to the appropriate prosecuting official or the appropriate custodial authorities, the IAD claim must fail."); *Norton v. Parke,* 892 F.2d 476, 480–81 (6th Cir.1989); *Casper v. Ryan,* 822 F.2d 1283, 1292 (3rd Cir.1987); *Johnson v. Stagner,* 781 F.2d 758, 760 n. 3

(9th Cir.1986) ("However, this court has required prisoners seeking to invoke the IAD to comply with its precise notice requirements, rather than merely providing some alternate form of notice to the various interested parties.").[5]

The Third Circuit has stated that "[t]here are persuasive reasons for requiring a prisoner to comply with the procedures required by Article III(a) as a predicate for invoking Article V(c)'s severe sanction of dismissal with prejudice." *Casper,* 822 F.2d at 1292. Compliance with the IAD is required so that the prosecuting attorney will be notified that the IAD has been invoked without being required to "analyze each communication from a prisoner with a fine-tooth comb to determine whether it should be construed as invoking the IAD." *Nash v. Jeffes,* 739 F.2d 878, 884 (3rd Cir.1984), *rev'd on other grounds sub nom, Carchman v. Nash,* 473 U.S. 716, 105 S.Ct. 3401, 87 L.Ed.2d 516 (1985). In addition, requiring strict compliance with the IAD provides the prosecuting attorney with accurate information from the warden concerning dates of incarceration, anticipated release dates, and other necessary details pertinent to deciding whether to prosecute. *See Norton,* 892 F.2d at 481. For example, if the prisoner is serving a lengthy sentence on a serious charge in the other state, the state lodging the detainer might decide not to spend limited resources on a trial that would not likely produce additional benefits. *See id.*

### B.

*Johnson's Failure to Comply with the IAD*

Johnson argues that the court of appeals erred in concluding that strict compliance

---

**4.** Several other states have also held that strict compliance with the provisions of the IAD is required. *See, e.g., State v. Greenwood,* 665 N.E.2d 579, 581 (Ind.1996); *Hickey v. State,* 349 N.W.2d 772, 778 (Iowa.Ct.App.1984); *Rushin v. Commonwealth,* 931 S.W.2d 456, 459 n. 9 (Ky.Ct.App.1996); *State v. Moreau,* 287 N.J.Super. 179, 670 A.2d 608, 610 (App.Div.1995); *Eckard v. Commonwealth,* 20 Va.App. 619, 460 S.E.2d 242, 246 (1995).

However, some states have concluded that only substantial compliance is required. *See, e.g., State v. Burrus,* 151 Ariz. 572, 729 P.2d 926, 931 (Ct.App.1986); *Smith v. United States,* 470 A.2d 315, 320 (D.C.1983); *Palmer v. Williams,* 120 N.M. 63, 897 P.2d 1111, 1115 (1995); *State*

*v. Mourey,* 64 Ohio St.3d 482, 597 N.E.2d 101, 104 (1992); *State v. Martin,* 765 P.2d 854, 856 (Utah 1988).

**5.** Some of these courts have recognized an exception to the strict compliance requirement of the IAD when the prisoner has done everything possible, and the custodial state is responsible for a default. *See Casper,* 822 F.2d at 1293. A prisoner who seeks to rely on the default of the custodial state to excuse his or her failure to satisfy the requirements of the IAD must nonetheless demonstrate that he or she substantially complied with the requirements to the extent possible. *See id.*

with the notification and certification provisions of the IAD is required to trigger the invocation of his speedy trial rights under that act. Johnson relies primarily on *People v. Thornton,* 890 P.2d 158 (Colo.App.1994), in support of his argument that a lesser "substantial compliance" requirement is sufficient to satisfy the IAD's requirements. We disagree.

Johnson urges that a combination of several factors in this case indicates that he has satisfied the substantial compliance requirement of the IAD, as set forth by the court of appeals in *Thornton,* and is entitled to its protections. First, he argues that his letter received by the Colorado court on April 14, 1994, explained that he was the subject of a hold, that he wanted the hold released, and that he was incarcerated for a period of two years in a Chino, California correctional facility. Second, he contends that his motion to dismiss, received by the Colorado court on September 22, 1994, contained a specific demand for speedy disposition of the Colorado charges pursuant to the IAD, and provided actual notice of his place and length of incarceration. Third, Johnson argues that it is clear from the prosecuting attorney's letters of October and November 1994 in response to Johnson's motion that the prosecutor was on notice that Johnson was attempting to exercise his rights under the IAD. Finally, Johnson suggests that the combination of the letter received by the court on April 14, 1994, and the motion to dismiss received by the court on September 22, 1994, provided the prosecutor with the term of his incarceration and his location, and the prosecutor had the necessary means to determine how much time remained to be served, the amount of good time earned, and whether Johnson was eligible for parole pursuant to Article III(a) of the IAD.

Thus, Johnson argues that he has substantially supplied the notice and information required for the Colorado authorities to determine whether to try him within the 180–day speedy disposition period. However, his reliance on *Thornton* to support his substantial compliance argument in the context of the IAD is misplaced. In *Thornton,* the defendant argued that the trial court erred in

denying his motion to dismiss based on the speedy trial provisions of the IAD. *See id.* at 161. The prosecution argued that the request was too vague, it was not accompanied by the certification of inmate status, and Thornton used an alias on the forms submitted to request speedy disposition. Thornton contended that his request for speedy disposition of the charge against him "substantially complied with the provisions of the IAD." *Id.* On appeal, the court of appeals agreed and concluded that prior decisions of the supreme court, specifically *People v. Trancoso,* 776 P.2d 374 (Colo.1989), suggest that "while strict compliance may not be required in every case, substantial compliance is required for a prisoner to invoke his or her rights." *Thornton,* 890 P.2d at 161. The court of appeals nonetheless concluded that Thornton did not meet the substantial compliance requirement because he failed to identify himself properly when asked by authorities for clarification of his identity. *See id.*

We conclude that the court of appeals in *Thornton* erroneously relied on *Trancoso* to support its conclusion that substantial compliance may be sufficient to fulfill the provisions of the IAD. *Trancoso* involved only an *intrastate detainer* under the UMDDA and had no application to the IAD. Although we have held that substantial compliance is sufficient in appropriate circumstances to invoke the provisions of the UMDDA, *see Trancoso,* 776 P.2d at 379; *accord, e.g., People v. Mascarenas,* 666 P.2d 101, 106 (Colo.1983), we have never applied that standard to the IAD, and we refuse to do so now. We stated in *People v. Campbell,* 742 P.2d 302, 306 (Colo. 1987), that the UMDDA and the IAD embody similar policies, but we did not hold in *Campbell* that the substantial compliance requirement is applicable to the IAD.

Rather, we have stated that the requirements of the IAD are mandatory. *See Hughes v. District Court,* 197 Colo. 396, 401, 593 P.2d 702, 705 (1979). In *Hughes,* we remanded the case to the district court with directions that the charges be dismissed with prejudice because the state failed to comply with the mandatory requirements of the IAD. *See id.* at 402, 593 P.2d at 706.

In *People v. Jacobs*, 198 Colo. 75, 78, 596 P.2d 1187, 1188 (1979), a case similar to this one, we again concluded that the requirements of the IAD are mandatory, and compliance with its mandates is essential. In *Jacobs*, charges were initiated against the defendant in Colorado; soon thereafter the defendant was incarcerated in Wisconsin. He wrote a letter directly to the district attorney in Colorado requesting disposition of the Colorado charges. *Id.* at 78, 596 P.2d at 1189. The defendant was extradited from Wisconsin, and the trial on the Colorado charges was not commenced until after the 180–day period set forth in the IAD had run. The defendant alleged that the state had failed to comply with the provisions of the IAD. *See id.* Nevertheless, we determined that the defendant had not properly complied with the IAD because his request for disposition was sent directly to the district attorney, and the "demand was not first sent or made to the Wisconsin official who had custody of the defendant at the time and, thus, was not forwarded by that official to the district attorney with the appropriate accompanying documents, *as mandated by Article III.* Compliance with the requirements of the [IAD] is essential." *Id.* (emphasis added).

Thus, in *Jacobs*, we concluded that because the defendant did not make his request for disposition in strict compliance with the requirements of the IAD, "his request was insufficient to trigger the state's obligations under Article III," and his argument that the state failed to comply with the IAD was without merit. *Id.* More recently in *People v. Newton*, 764 P.2d 1182, 1186 (Colo.1988), we reiterated that the provisions of the IAD are mandatory and will control over any conflicting provisions of the UMDDA. We said that the running of the 180–day speedy trial period in Article III of the IAD is triggered by the prisoner causing his or her request for final disposition to be delivered to the appropriate officials. *See id.* ("The prisoner's act in causing his request for final disposition to be delivered 'to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction' triggers the running of the 180–day speedy trial period in Article III(a) of the IAD."). The request for speedy disposition must also meet the certification and documentation mandates of the IAD to trigger the running of the 180–day period. *See Jacobs*, 198 Colo. at 78, 596 P.2d at 1189 ("Compliance with the requirements of the [IAD] is essential.").

■ Johnson's letter and his motion to dismiss were insufficient to trigger the speedy disposition provisions of the IAD. We first consider Johnson's letter. His letter received by the Colorado court on April 14, 1994, acknowledged a "hold" on him, but it did not mention the IAD or speedy trial rights. The letter stated only that he wished to have the hold released against him so that he could participate in rehabilitation and vocational programs. More importantly, the letter was sent by Johnson personally to the Adams County District Court only. Johnson did not notify the custodial officials in California of his letter or his intention to invoke the IAD. Thus, the custodial officials in that state could not and did not provide the proper certification to the Colorado court and the prosecuting attorney in conformity with the IAD. Therefore, Johnson's letter did not trigger the speedy disposition provisions of Article III of the IAD. *See Jacobs*, 198 Colo. at 78, 596 P.2d at 1189.

Moreover, as the court of appeals observed, Johnson's motion to dismiss received by the Colorado court on September 22, 1994, "did not specifically request that a final disposition of the charge be made. In addition, his request was sent only to the court and not to the prosecutor." *Johnson*, 926 P.2d at 129. Johnson's motion was not accompanied by the appropriate certification from the custodial official regarding his term of commitment, the time already served, the time remaining to be served, the amount of good time earned, or Johnson's parole eligibility. *Id.*

Even after Johnson received the response letter from the prosecuting attorney, he failed to comply fully with the requirements of the IAD. The prosecutor informed Johnson that, if he wished to have the Colorado charge against him resolved, he must contact the warden of his correctional facility to obtain the necessary documents to invoke the expedited procedures under the IAD. There

is no indication in the record that Johnson contacted California prison officials at any time regarding this matter.

The policy of uniformity surrounding interstate rendition, coupled with our prior case law, dictate that neither Johnson's letter of April 1994 nor his motion to dismiss, taken individually or together, satisfied the strict compliance requirement of the IAD to commence the running of the speedy disposition period. Johnson's failure to obtain the appropriate certification containing the required elements, and his failure to channel his letter or motion to dismiss through the proper custodial officials in California, is in direct contravention of section 24–60–501, Art. III(a). The court of appeals correctly concluded that strict compliance with the terms of the IAD is required, and "to the extent that *Thornton* is inconsistent, *Newton* and *Hughes* control." *Johnson*, 926 P.2d at 130.

### III.

Accordingly, we affirm the judgment of the court of appeals reinstating the felony theft charge against Johnson.