The PEOPLE of the State of Colorado, Plaintiff–Appellee,

v.

Matthew L. HARTER, Defendant–Appellant.

No. 07CA1156.

Colorado Court of Appeals, Div. VII.

Feb. 19, 2009.

Rehearing Denied April 2, 2009.

John W. Suthers, Attorney General, Susan E. Friedman, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

Nora V. Kelly, P.C., Nora V. Kelly, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge GABRIEL.

Defendant, Matthew L. Harter, appeals the district court's order denying his motion to dismiss, in which he argued that his conviction must be vacated because the state did not bring him to trial within the limitations period specified in the Interstate Agreement on Detainers (IAD), section 24–60–501, C.R.S.2008. Because we conclude that defendant's request for disposition of the charges complied with the IAD, we reverse and remand with instructions that the district court vacate defendant's judgment and sentence and dismiss his case with prejudice.

## I. Background

In 2004, defendant was charged in Mesa County with unlawful possession of a controlled substance, possession with intent to distribute, possession of drug paraphernalia, and three habitual criminal counts. Before trial, he was arrested and convicted on other charges in Utah. While he was in custody but prior to sentencing there, the Colorado authorities lodged a detainer with the Utah authorities, who then placed a hold on defendant and advised that they would notify Colorado when he had cleared local charges and was ready for transport. In September 2005, defendant was sentenced on the Utah charges.

Shortly thereafter, while serving his Utah sentence, defendant wrote several letters to the Mesa County District Court and the Mesa County District Attorney's office requesting a speedy disposition on the Colorado charges pursuant to the IAD. Defendant asked the custodial authorities in Utah to send these letters on his behalf by certified mail and to obtain a return receipt for him, which they did. Attached to at least one of these sets of letters was a computer screen printout from the Utah Inmate Jail Management System (IJMS) that contained information regarding defendant's incarceration in Utah (a copy of this printout is attached as Appendix A). Defendant had requested that the Utah officials provide documentation of his confinement that would comply with the requirements of the IAD, and they provided this printout in response. The district court received defendant's request with the IJMS printout on December 30, 2005.

Defendant subsequently moved for dismissal of the Mesa County charges based on an alleged violation of his speedy trial rights under the IAD. Initially, the district court

denied the motion on the ground that the IAD does not apply to prisoners held in county jails. The court further concluded that defendant had not satisfied the requirement that he forward his request for a final disposition and a certificate containing information regarding his incarceration to the prosecuting attorney until August 23, 2006. In so holding, the court appears to have found that defendant had provided a complying certificate, just not within sufficient time to cause the speedy trial deadline to run.

After the district court entered its order, a division of this court decided *People v. Walton*, 167 P.3d 163, 165–66 (Colo.App.2007), in which the division concluded that the IAD applies to inmates confined in county jails. The district court then amended its previous order to remove the portion that denied defendant's motion to dismiss on the ground that the IAD does not apply to inmates in county jails. The court reaffirmed its prior order in all other respects.

Subsequently, on defendant's motion for reconsideration, the court determined that the district attorney had, in fact, received defendant's request for a speedy disposition and the accompanying IJMS printout by January 4, 2006. The court thus amended its prior factual finding that defendant did not comply with this requirement of the IAD until August 23, 2006. The court went on, however, to conclude that the IJMS printout did not strictly comply with the requirements of the IAD. In so holding, the court did not explain the apparent contradiction between this determination and its prior finding that the certificate had been provided, just not early enough. Nor did the court explain how the IJMS printout failed to comply with the requirements of the IAD. The court, however, expressly rejected the prosecution's argument that the IJMS printout was deficient because it did not contain information concerning defendant's parole eligibility or any decisions of the state parole board relating to defendant. The court found that "it defies logic that a person should be required to provide evidence that is non-existent (i.e. since the Defendant's Utah sentence didn't have a parole requirement or component there is no information concerning parole

eligibility or parole board actions that exist[s] )."

After his motion to dismiss was denied, defendant entered into a plea agreement by which he pleaded guilty to the habitual counts and possession of more than one gram of a controlled substance. Prior to entering his plea, defendant advised the court that while he was incarcerated in Utah, because his custody status was unclear, he had been denied access to the exercise area as well as to work programs that were designed to teach him useful skills. Defendant further stated that due to the passage of time, he did not have a defense to present. The court ultimately accepted defendant's plea and sentenced him accordingly.

In connection with defendant's plea, the district court and the parties agreed that defendant would retain the right to appeal the court's denial of his motion to dismiss. Defendant now appeals.

## II. Certificate

Defendant contends that the trial court erred in denying his motion to dismiss pursuant to the IAD because the IJMS printout satisfied the strict compliance requirement of the IAD and because, in any event, he did everything he could to comply with the requirements of the IAD. Because we agree with defendant's first argument, we need not reach his second.

The IAD is " 'a congressionally sanctioned interstate compact within the Compact Clause, U.S. Const., Art. I, § 10, cl. 3, and thus is a federal law subject to federal construction.' " *Johnson v. People*, 939 P.2d 817, 819 (Colo.1997) (quoting *Norton v. Parke*, 892 F.2d 476, 477 n. 2 (6th Cir.1989)). It "shall be liberally construed so as to effectuate its purposes." § 24–60–501, art. IX. We review de novo a decision applying the IAD. *Walton*, 167 P.3d at 165.

The IAD facilitates the speedy disposition of untried charges filed against a defendant who is imprisoned in another compact state upon a proper request by the defendant. *See Johnson*, 939 P.2d at 820; *Walton*, 167 P.3d at 165. Specifically, the IAD provides a mechanism for prisoners to

insist upon the speedy and final disposition of untried charges that are the subject of detainers, so that prison rehabilitation programs initiated for the prisoners' benefit will not be disrupted or precluded by the existence of the untried charges. *See People v. Higinbotham*, 712 P.2d 993, 997 (Colo.1986).

As pertinent here, the IAD provides that a defendant must be brought to trial within 180 days after he or she has caused to be delivered to the prosecuting officer and the appropriate court written notice of the place of his or her imprisonment and his or her request for a final disposition of the indictment, information, or complaint. § 24–60–501, art. III(a). Further, the IAD provides:

> The request of the prisoner shall be accompanied by a certificate of the appropriate official having custody of the prisoner, stating the term of commitment under which the prisoner is being held, the time already served, the time remaining to be served on the sentence, the amount of good time earned, the time of parole eligibility of the prisoner, and any decisions of the state parole agency relating to the prisoner.

*Id.*

Certain procedures must be followed in order to trigger the requirement that the prisoner be brought to trial within 180 days. *Id.* In particular, the IAD provides,

> The written notice and request for final disposition referred to in [article III(a)] shall be given or sent by the prisoner to the warden, commissioner of corrections, or other official having custody of him, who shall promptly forward it together with the certificate to the appropriate prosecuting official and court by registered or certified mail, return receipt requested.

§ 24–60–501, art. III(b).

■ Strict compliance with the IAD's procedures is required. *See Johnson*, 939 P.2d at 824. Such compliance ensures that the prosecuting attorney will be notified when the IAD has been invoked without being required to " 'analyze each communication from a prisoner with a fine-tooth comb to determine whether it should be construed as invoking the IAD.' " *Id.* at 821 (quoting

*Nash v. Jeffes*, 739 F.2d 878, 884 (3d Cir. 1984), *rev'd on other grounds sub nom. Carchman v. Nash*, 473 U.S. 716, 105 S.Ct. 3401, 87 L.Ed.2d 516 (1985)). Such compliance further ensures that the prosecuting attorney is provided with accurate information from the warden concerning dates of incarceration, anticipated release dates, and other necessary details pertinent to deciding whether to prosecute. *Johnson*, 939 P.2d at 821. Moreover, "[b]ecause interstate arrangements must be made for the transfer, transport, and trial of a prisoner in the custody of another jurisdiction, application of a strict compliance requirement promotes interstate reliance on the terms of the compact and lends stability to fulfilling its objectives." *Id.*

■ Subject to limited exceptions not pertinent here, where the criminal charges underlying a detainer are not brought to trial within 180 days of the receipt of the prisoner's proper request for final disposition, the IAD requires the court to dismiss the charges with prejudice, without regard to any showing of prejudice by the prisoner. § 24–60–501, art. V(c); *People v. Newton*, 764 P.2d 1182, 1187 (Colo.1988).

Here, the district court expressly found that the Mesa County District Attorney had received defendant's notice and the IJMS printout on or before January 4, 2006. Moreover, it is undisputed that Colorado did not bring defendant to trial within 180 days of that date. In addition, in the district court, it was undisputed that defendant had given the notice and printout to the Utah custodial officials to send to the Mesa County District Court and District Attorney and that the Utah officials did so, by certified mail.

Notwithstanding the foregoing, at oral argument on appeal, the prosecution asserted that we can affirm the district court's order because defendant and not the Utah custodial officials sent those documents. We reject this argument for two reasons. First, as noted, the record belies the prosecution's factual premise. Second, even if there were any evidence to support the prosecution's assertion, the prosecution had never made this argument before, either in the district court or in its brief on appeal, nor was it a

basis for the district court's ruling. Accordingly, we may appropriately decline to address it. *Spencer v. Bd. of County Comm'rs,* 39 P.3d 1272, 1276 (Colo.App.2001).

█ The sole issue before us is thus whether the IJMS printout satisfied the requirement that defendant provide a "certificate of the appropriate official having custody of [him]" detailing the terms of his incarceration. We conclude that it did.

The IJMS printout that defendant provided clearly shows (1) the date defendant's sentence began, (2) the total number of days of his original sentence, (3) the number of days defendant had already served, (4) the amount of good time earned, (5) the number of days thus remaining on defendant's sentence, and (6) defendant's sentence release date, calculated from the number of days remaining on defendant's sentence. Indeed, at the July 5, 2007 hearing on defendant's motion for reconsideration, the prosecution conceded that all required elements of the IAD other than information concerning defendant's parole eligibility and any decisions of the state parole agency regarding defendant "were, in fact, there." As to the parole-related information, although the printout did not include such information, as noted above, the district court expressly found that defendant's Utah sentence had no parole requirement or component. Thus, there was no information to report, and the court specifically rejected the prosecution's argument that the IJMS printout was deficient in this regard, a finding that the prosecution does not contest on appeal.

In light of the foregoing, we conclude that the IJMS printout satisfied the certification requirement of the IAD. Indeed, the information that defendant provided and the procedures that defendant employed in this case far exceeded those that our supreme court found insufficient in *Johnson,* 939 P.2d at 823. In *Johnson,* the defendant wrote a letter to the district court indicating that he was incarcerated and asking that the hold that had been placed on him be released so that he could participate in the education and vocational programs that would be available to him but for the hold. *Id.* at 818. The court forwarded the defendant's correspon-dence to the local prosecutor and the public defender with a notation that they could take whatever action they deemed necessary. *Id.* Neither took any action. *Id.* Thereafter, the defendant filed a pro se motion to dismiss for failure to comply with the speedy trial provisions of the IAD. *Id.* at 819.

The supreme court ultimately held that the defendant's letter and his pro se motion to dismiss were insufficient to start the 180–day speedy trial period under the IAD. *Id.* at 823. The court noted that the letter stated only a desire to have a hold removed. It did not even mention the IAD or speedy trial rights. *Id.* Moreover, the defendant only sent the letter to the district court. He did not notify the custodial officials where he was incarcerated of his letter or of his intent to invoke the IAD, as required. Thus, the custodial officials could not and did not provide the proper certification under the IAD. *Id.*

The court further held that the defendant's motion was likewise insufficient to start the speedy trial period. Like the letter, the motion did not specifically request a final disposition of the charges. *Id.* Moreover, like the letter, the motion was sent only to the court. *Id.* Finally, the motion was not accompanied by any certificate regarding the terms of his confinement. *Id.*

Here, in contrast, the district court found that defendant provided a notice specifically requesting a final disposition of the charges to both the court and the prosecuting attorney. The prosecution does not challenge this finding on appeal. Moreover, unlike in *Johnson,* where the defendant provided no certification at all, defendant here obtained from the appropriate custodial officials a document providing all of the information required by the IAD.

Finally, it is important to note that not only did defendant comply with the letter of the IAD, but also enforcing the speedy trial provisions of the IAD here would be fully consistent with the policies of the IAD noted above. For example, it is undisputed that the court and the prosecution received clear, timely, and unambiguous notice that defendant was invoking the protections of the IAD. Moreover, the prosecution had sub-

stantial and detailed information regarding the terms of defendant's incarceration such that it could make a reasoned decision as to whether to prosecute. Finally, the state's long delay in bringing defendant to trial resulted in defendant's custody status being in limbo. As a result, defendant was not permitted to participate in available prison rehabilitation programs for a lengthy period of time, in direct contravention of the policies underlying the IAD noted above.

For these reasons, we conclude that the IJMS printout that defendant provided was more than sufficient under the IAD and, thus, that defendant satisfied the strict compliance requirements of that statute. Accordingly, defendant's case must be dismissed with prejudice for failure to bring him to trial within the mandatory speedy trial period.

The order is reversed, and the case is remanded to the district court with instructions that the court vacate defendant's judgment and sentence and dismiss his case with prejudice.

Judge RUSSEL and Judge J. JONES concur.

## APPENDIX A

(certain information redacted)