The summaries of the Colorado Court of Appeals published opinions constitute no part of the opinion of the division but have been prepared by the division for the convenience of the reader. The summaries may not be cited or relied upon as they are not the official language of the division. Any discrepancy between the language in the summary and in the opinion should be resolved in favor of the language in the opinion.

SUMMARY
April 10, 2025

## 2025COA39

**No. 23CA1556, *People v. Spomer* — Government — Interstate Compacts and Agreements — Interstate Agreement on Detainers; Criminal Law — Arrest Warrants**

This appeal involves the application of the Interstate Agreement on Detainers (IAD), section 24-60-501, C.R.S. 2024. The People appeal a judgment dismissing a criminal case based on a violation of the IAD. The district court concluded that the IAD's protections extended to the defendant's case because while the defendant was in custody in another state, an open warrant for his arrest in this case constituted a "detainer" under the IAD.

A division of the court of appeals addresses an issue of first impression in Colorado: Is an arrest warrant, standing alone, a detainer under the IAD such that its mere existence, without more, triggers the IAD's requirements? The division concludes that the arrest warrant in this case didn't constitute a detainer for IAD

purposes.  So the district court erred by treating it as a detainer and finding a violation of the IAD.  The division, therefore, reverses the judgment of dismissal and remands the case for the charges to be reinstated and the district court to address the additional issues that were left unresolved when it dismissed the case.

COLORADO COURT OF APPEALS                                    **2025COA39**

---

Court of Appeals No. 23CA1556
Jefferson County District Court No. 20CR3720
Honorable Russel Klein, Judge

---

The People of the State of Colorado,

Plaintiff-Appellant,

v.

Shawn Paul Spomer,

Defendant-Appellee.

---

JUDGMENT REVERSED AND CASE
REMANDED WITH DIRECTIONS

Division VI
Opinion by JUDGE WELLING
Brown and Hawthorne*, JJ., concur

Announced April 10, 2025

---

Alexis King, District Attorney, Rebecca A. Adams, Senior Appellate Deputy
District Attorney, Golden, Colorado, for Plaintiff-Appellant

Megan A. Ring, Colorado State Public Defender, Rachel Z. Geiman, Deputy
State Public Defender, Denver, Colorado, for Defendant-Appellee

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art.
VI, § 5(3), and § 24-51-1105, C.R.S. 2024.

¶ 1     The People appeal the judgment dismissing a Jefferson County criminal case against defendant, Shawn Paul Spomer, based on a violation of the Interstate Agreement on Detainers (IAD), section 24-60-501, C.R.S. 2024.  The district court concluded that the IAD's protections extended to Spomer's case because while he was in custody in another state, an open warrant for his arrest in this case constituted a "detainer" under the IAD.

¶ 2     This case presents an issue of first impression in Colorado: Is an arrest warrant, standing alone, a detainer under the IAD such that its mere existence, without more, triggers the IAD's requirements?  We conclude that the arrest warrant in this case didn't constitute a detainer for IAD purposes.  So the district court erred by treating it as a detainer and finding a violation of the IAD. We, therefore, reverse the judgment of dismissal and remand the case for the charges to be reinstated and the district court to address the additional issues that were left unresolved when it dismissed the case.

## I.     Background

¶ 3     In October 2020, a detective saw Spomer driving a vehicle that had been reported as stolen.  The detective contacted Spomer,

1

suspecting him of felony motor vehicle theft, but didn't arrest him because of existing COVID-19 jail restrictions. Instead, the detective released Spomer after advising him that he would be facing a felony summons or warrant at a later time.

¶ 4     In November 2020, the People filed a complaint in the Jefferson County courts, charging Spomer with first degree aggravated motor vehicle theft, criminal possession of an identification document, unlawful possession of a controlled substance, and possession of drug paraphernalia. The court issued a summons for Spomer to appear at a hearing on the charges but later issued a warrant for his arrest because the prosecution was unable to serve him with the summons.

¶ 5     In June 2021, Spomer was arrested in Weld County, where he was also facing criminal charges. Based on his arrest in Weld County, the arrest warrant in this matter was cancelled. Spomer was released on bond, the public defender was appointed to represent him, and an arraignment in this case — the Jefferson County case — was set for October 5, 2021. Spomer failed to appear for that arraignment, so the Jefferson County District Court issued a warrant for his arrest.

¶ 6    In November 2021, Spomer was arrested in Adams County, and the warrant in this matter was again cancelled.  Spomer was once more released on bond, and the arraignment in this case was reset for January 10, 2022.  Spomer once again didn't appear for the scheduled arraignment, so the district court issued yet another warrant for his arrest.

¶ 7    The record reflects that Spomer failed to appear at the January 10 arraignment because he was in custody in Kansas.  He remained in custody in Kansas until sometime in February 2022, when he was extradited to Ohio to face criminal charges there.  Spomer was sentenced in the Ohio matter in June 2022 and was expected to be released from custody in Ohio in May 2023.

¶ 8    In June 2022, the Weld County District Attorney lodged a detainer against Spomer with the Ohio Department of Rehabilitation and Correction (ODRC) for the charges pending in Weld County.

¶ 9    In March 2023, Spomer filed a pro se letter with the Jefferson County District Court stating that he was incarcerated in Ohio and that he had received "notice from the Bureau of Sentence Computation & Records Management of a pending warrant and

3

detainer out of [Jefferson] [C]ounty." He asked that the pending Jefferson County charges be dismissed or that he be granted time served on them so that he could remain in Ohio after his release from custody. The court denied his requests in his pro se letter, noting that he was represented by counsel.

¶ 10 In May 2023, Spomer completed his Ohio sentence and was returned to Colorado based on the Weld County detainer. In June 2023, Spomer, through appointed counsel, filed a motion to dismiss the underlying Jefferson County case for violations of the IAD and his constitutional rights to a speedy trial and due process. As relevant here, he asserted that the ODRC warden had failed to comply with his obligation under the IAD to notify Spomer "of the detainers against him from Jefferson County." In response, the prosecution argued that the IAD and its obligations weren't triggered because no detainer on the pending Jefferson County charges had been lodged with the ODRC.

¶ 11 At a July 23, 2023, hearing, the district court addressed Spomer's motion, including the issue of whether the warrant issued for his arrest in this matter constituted a detainer sufficient to trigger the IAD's requirements. The court found that the warrant

4

constituted a detainer because a warrant meets the definition, and fulfills the purpose, of a detainer under the IAD. The court then concluded that Spomer's rights under the IAD had been violated because officials at the ODRC had failed to notify him of the detainer. Based on this finding, the court ruled that "the only remedy available under the IAD [wa]s for a dismissal of the case given the substantial time periods between when the warrant was issued and detainer should have been notified and . . . where we are here today." Because it dismissed all charges based on an IAD violation, the court didn't address Spomer's constitutional claims. The People appeal this judgment of dismissal.

## II. Legal Authority and Standard of Review

¶ 12    In 1969, Colorado adopted the IAD — a congressionally sanctioned interstate compact that establishes procedures for resolving one compact state's pending criminal charges against a person imprisoned in another compact state. *See* § 24-60-501; *New York v. Hill,* 528 U.S. 110, 111 (2000); *Johnson v. People,* 939 P.2d

817, 819 (Colo. 1997).[1]  "[I]t is the policy of the party states and the purpose of th[e] [IAD] to encourage the expeditious and orderly disposition of such charges and determination of the proper status of any and all detainers based on untried indictments, informations, or complaints."  § 24-60-501, art. I.

¶ 13    The IAD designates the state in which the prisoner is incarcerated as the "sending state" and the state with the untried indictments, informations, or complaints as the "receiving state."  § 24-60-501, art. II(b), (c).  "[S]tate" is defined as, among other things, a state of the United States, the United States of America, and the District of Columbia.  § 24-60-501, art. II(a).

---

[1] In 1969, the General Assembly, in a single bill, adopted the IAD and the Uniform Mandatory Disposition of Detainers Act (UMDDA).  *See* Ch. 111, secs. 8-9, §§ 39-23-1 to -8 (UMDDA), §§ 74-16-1 to -7 (IAD), 1969 Colo. Sess. Laws 286, 291-97; *see also Johnson v. People*, 939 P.2d 817, 819 (Colo. 1997) (discussing the legislative history of and relationship between the IAD and UMDDA).  The IAD was originally codified in article 17 (instead of article 16) of title 74 because another interstate compact — the Interstate Library Compact — had already been codified at the same location earlier that session.  *See* Ch. 193, sec. 1, §§ 74-16-1 to -7, 1969 Colo. Sess. Laws 552-57.  The IAD was subsequently renumbered to sections 24-60-501 to -507 in the 1973 codification of the Colorado Revised Statutes.

¶ 14    The IAD sets forth four procedural steps that must be followed by the custodial officials of the receiving state, the officials of the sending state, and the prisoner. *Johnson*, 939 P.2d at 820-21. "[S]trict compliance with the terms of the IAD is required . . . ." *Id.* at 824.

¶ 15    As relevant here, the first step requires the officials of the receiving state to lodge a detainer against the prisoner with the officials of the sending state who have custody of the prisoner. § 24-60-501, art. III(a); *Johnson*, 939 P.2d at 820. The detainer acts as "a legal order that requires a State in which an individual is currently imprisoned to hold that individual when [they] ha[ve] finished serving [their] sentence so that [they] may be tried by a different State for a different crime." *Alabama v. Bozeman*, 533 U.S. 146, 148 (2001). "[T]he provisions of the [IAD] are triggered only when a 'detainer' is filed with the custodial (sending) State by another State (receiving) having untried charges pending against the prisoner . . . ." *United States v. Mauro*, 436 U.S. 340, 343 (1978).

¶ 16    After a detainer is filed and the IAD is triggered, "the custodial official is required to notify the prisoner of the source and contents

of the detainer and [the prisoner's] right to make a request for final disposition of the indictment, information, or complaint on which the detainer is based." *Johnson*, 939 P.2d at 820 (citing § 24-60-501, art. III(c)). The prisoner must then "deliver to the warden or custodial official a written notice and request for final disposition." *Id.* (citing § 24-60-501, art. III(b)). Finally, "the custodial official must forward the prisoner's request for a final disposition and a certification containing information regarding the prisoner's incarceration to the appropriate court and the prosecuting officer." *Id.* (citing § 24-60-501, art. III(a)).

¶ 17 If these procedures are followed, the prosecutor in the receiving state must try the prisoner within 180 days after receipt of the prisoner's request for final disposition, "unless the court having jurisdiction grants a necessary or reasonable continuance." *Id.* at 821 (citing § 24-60-501, art. III(a)).

¶ 18 We review de novo a court's interpretation and application of the IAD. *People v. Harter*, 216 P.3d 606, 608 (Colo. App. 2009); *see also People v. Walton*, 167 P.3d 163, 165 (Colo. App. 2007). As an interstate compact, the IAD is both state and federal law. *Johnson*, 939 P.2d at 821. Thus, "federal decisions are instructive regarding

8

the interpretation of its terms," and "[a] uniform standard of compliance and interpretation by the compact states reinforces the IAD's public policy intent." *Id.*

¶ 19    We review a court's ruling on a motion to dismiss a case under the IAD for an abuse of discretion. *United States v. Ray*, 899 F.3d 852, 857 (10th Cir. 2018); *cf. People v. Mascarenas*, 666 P.2d 101, 106 (Colo. 1983) (reviewing for an abuse of discretion the district court's dismissal of a case for violating the *intrastate* Uniform Mandatory Disposition of Detainers Act (UMDDA)); *People v. Bost*, 770 P.2d 1209, 1214 (Colo. 1989) (Because the IAD and the UMDDA "reflect the same policy of facilitating speedy disposition of untried charges, . . . the principles of one may be applied to the other unless the provisions conflict."). Under the abuse of discretion standard, we will "uphold the trial court's ruling unless it is manifestly arbitrary, unreasonable, or unfair, or when it is based on an erroneous understanding or application of the law." *People v. Sandoval*, 2018 COA 156, ¶ 26.

## III.  Analysis

¶ 20    The People contend that the district court erred by finding that the issuance of the arrest warrant for Spomer, by itself, constituted a detainer for IAD purposes.  We agree that the district court erred.

¶ 21    The IAD doesn't define "detainer." *Mauro*, 436 U.S. at 359. But the Supreme Court has interpreted detainer to mean "a request filed by a criminal justice agency with the institution in which a prisoner is incarcerated, asking that the prisoner be held for the agency, or that the agency be advised when the prisoner's release is imminent." *Fex v. Michigan*, 507 U.S. 43, 44 (1993); *see also Hill*, 528 U.S. at 112; *Carchman v. Nash*, 473 U.S. 716, 719 (1985).

¶ 22    The Colorado Supreme Court has consistently relied on this definition when addressing IAD issues, *see Johnson*, 939 P.2d at 819; *Moody v. Corsentino*, 843 P.2d 1355, 1367 (Colo. 1993); *Sweaney v. Dist. Ct.*, 713 P.2d 914, 915 (Colo. 1986); *People v. Morgan*, 712 P.2d 1004, 1006 (Colo. 1986); *People v. Yellen*, 704 P.2d 306, 311 (Colo. 1985); *People v. Moody*, 676 P.2d 691, 693 n.2 (Colo. 1984), and we are bound to follow this definition of detainer for IAD purposes, *see Ray*, 899 F.3d at 858 ("[W]e are bound by the pronouncements of the Supreme Court, and the Supreme Court has

10

defined detainer on multiple occasions to mean something specific in the context of the IAD."); *see also In re Estate of Ramstetter*, 2016 COA 81, ¶ 40 (the court of appeals is bound to follow supreme court precedent).

¶ 23 This definition still doesn't directly answer the question before us — namely, whether an outstanding arrest warrant by itself constitutes a detainer. But we aren't without guidance in answering that question.

¶ 24 A "warrant" is statutorily defined as "a written order issued by a judge of a court of record directed to any peace officer commanding the arrest of the person named or described in the order." § 16-1-104(18), C.R.S. 2024. Contrary to the district court's finding, we conclude that this statutory language doesn't show that a warrant falls within the definition of detainer or fulfill the purposes of a detainer because a warrant doesn't ask a custodial institution to hold a prisoner for a criminal justice agency or to advise the agency of the prisoner's imminent release. *See Fex*, 507 U.S. at 44.

¶ 25 In *Tucker v. United States*, 569 A.2d 162 (D.C. 1990), the District of Columbia Circuit Court of Appeals applied the United

States Supreme Court's definition of detainer to determine whether an arrest warrant constituted a detainer for IAD purposes. The court determined that an arrest warrant could be considered a detainer but that more than its mere issuance was required:

> Under this definition, an arrest warrant will serve as a detainer within the purview of the IAD if: 1) it is based on an untried information, indictment, or complaint; 2) it is filed by a criminal justice agency; 3) it is filed directly with the facility where a prisoner is incarcerated; 4) it notifies prison officials that a prisoner is wanted to face pending charges; and 5) it asks the institution where the prisoner is incarcerated either to hold the prisoner at the conclusion the prisoner's sentence, or to notify agency officials when the prisoner's release is imminent.

*Id.* at 165. The court concluded that, "[w]here all five of these criteria are satisfied, an arrest warrant is plainly 'lodged' as a detainer, and the provisions of the IAD come into play." *Id.*

¶ 26 For three reasons, we are persuaded by *Tucker* that these additional criteria are required before an arrest warrant may be considered a detainer under the IAD.

¶ 27 First, the other circuits confronted with this issue apply a similar definition. *See United States v. Jones*, 454 F.3d 642, 647 (7th Cir. 2006) ("A detainer is a notice filed with a prisoner's

12

institution of incarceration alerting both [the prisoner] and the institution that the prisoner is wanted to face criminal charges in another jurisdiction"; "[p]ractically, the detainer is a request that the prisoner be held for the other jurisdiction's prosecutors or that the holding institution notify the prosecutors of the prisoner's pending release."); *United States v. Paredes-Batista*, 140 F.3d 367, 372 (2d Cir. 1998) (A detainer is a notice that is "filed with an institution in which a particular prisoner is incarcerated, advising that [the prisoner] is wanted to face pending criminal charges in another jurisdiction, and requesting that the prisoner either be held for the other jurisdiction's prosecutors or that these prosecutors be notified when the prisoner's release is imminent."); *Bost*, 770 P.2d at 1214 ("[T]he provisions of the IAD are triggered only when a prosecutor files charges against a person serving a term of imprisonment in another state and files a detainer with the official having custody of the prisoner."); *People v. Newton*, 764 P.2d 1182, 1186 (Colo. 1988) ("The provisions of the IAD are activated when a state charges a person imprisoned in another state with a crime and files a detainer with the official having custody of the prisoner."); *Yellen*, 704 P.2d at 311 ("[T]he IAD expressly conditions

13

the duty to promptly inform upon the filing of a detainer," and a detainer must be filed with the institution in which a prisoner is serving a sentence.); *cf. Ray*, 899 F.3d at 858 (An arrest "doesn't fit within the Supreme Court's binding definition of detainer" because it "isn't 'a notification filed with the institution in which a prisoner is serving a sentence.'" (quoting *Mauro*, 436 U.S. at 359)).

¶ 28 Second, adopting the *Tucker* criteria furthers the policy of uniformly applying the IAD's provisions among the party states. *See Johnson*, 939 P.2d at 820-21 ("[O]ur interpretation of the IAD, as a compact among states and the United States, should be guided by a policy of uniformity in applying its provisions to the transfer, transport, and trial of incarcerated persons between jurisdictions."); *see also State v. Williams*, 573 N.W.2d 106, 113 (Neb. 1997); *State v. Prentice*, 613 S.E.2d 498, 503 (N.C. Ct. App. 2005); *State v. Barney*, 2008 UT App 250, ¶¶ 7-8, 189 P.3d 1277, 1279; *State v. Welker*, 110 P.3d 1167, 1170 (Wash. Ct. App. 2005), *aff'd*, 141 P.3d 8 (Wash. 2006).

¶ 29 Third and finally, adopting the *Tucker* criteria avoids serious pragmatic issues that would arise under the rule urged by Spomer and adopted by the district court. Specifically, if the mere issuance

14

of an arrest warrant constitutes a detainer, custodial officials in each party state would be obligated to conduct daily searches of national arrest warrant databases to determine whether an arrest warrant had been issued for each prisoner in the custody of their institution. This is both impractical and beyond what is contemplated by the statute.

¶ 30    Applying the *Tucker* criteria to Spomer's case, the warrant satisfies the first, second, and fourth criteria — (1) it's based on an untried information or complaint; (2) it was filed by a criminal justice agency; and (4) it notifies whoever reads it that a prisoner is wanted to face pending charges — but it fails the third and fifth criteria — (3) it wasn't filed directly with the facility where Spomer was incarcerated and (5) it doesn't ask the institution where Spomer was incarcerated either to hold him at the conclusion of his sentence or to notify Colorado officials when his release is imminent. Indeed, there is no indication in the record, and Spomer doesn't argue, that a Jefferson County criminal justice agency filed or lodged the arrest warrant with the ODRC or that the agency officials requested that Spomer be held or that they be alerted to his imminent release.

Accordingly, we conclude that the mere issuance of the warrant for Spomer's arrest was insufficient to meet the definition of detainer and to trigger the IAD provisions. *See Tucker*, 569 A.2d at 164-67 (holding that District of Columbia arrest warrants left with South Carolina police officers didn't constitute a detainer against the prisoner because the warrants were left at the request of the South Carolina police, they weren't provided to correctional officers, and they didn't contain a request that South Carolina hold the prisoner at the completion of his sentence or notify the District of Columbia of the prisoner's imminent release); *United States v. Fulford*, 825 F.2d 3, 10-11 (3d Cir. 1987) (An arrest warrant wasn't considered a detainer because it wasn't directed to the institution in which the prisoner was confined and, therefore, "cannot fairly be considered notice to the institution's officials."); *Barney*, ¶¶ 7-8, 189 P.3d at 1279 (a Utah arrest warrant wasn't a detainer because it hadn't been sent to the Montana State Prison, where the prisoner was in custody, and the Utah officials hadn't requested that the prison either hold the prisoner or inform them of his imminent release); *cf. Yellen*, 704 P.2d at 308, 311 (reversing the district court's dismissal of a case for violations of the UMDDA because,

16

while the superintendent of the institution in which the prisoner was serving a sentence was aware of the pending charges in another jurisdiction, no "warrant" or "detainer" had been filed with the institution).

¶ 32    To be clear, we don't suggest that an arrest warrant can *never* constitute a detainer but only that the issuance of the warrant, *by itself*, is insufficient to meet the definition of a detainer for IAD purposes.  *See Tucker*, 569 A.2d at 165 n.5.

¶ 33    Spomer recognizes the above authority but argues that, if an arrest warrant isn't considered a detainer in this case, we create a loophole that would undermine the IAD.  As an example, he posits that, where, like here, a prisoner in out-of-state custody has pending charges in two Colorado judicial districts and the criminal justice agency from judicial district "B" lodges a detainer on its pending charges, the criminal justice agency from judicial district "A" can obtain the benefit of, but not invoke or assume the burden of, the IAD.  This is so, Spomer argues, because "[a]n arrest warrant from district A, even if limited to Colorado, all but guarantees that once the [prisoner] is back in Colorado because of district B's detainer, the [prisoner] will eventually be brought to district A."

17

Spomer asserts that, because of district A's decision not to file a detainer, the prisoner would encounter the very problems that the IAD is intended to alleviate — such as defending their case long after the charges had been filed, losing their ability to preserve evidence, and losing the opportunity to obtain concurrent sentencing — with no means of availing himself of the IAD's safeguards.

¶ 34    Spomer isn't wrong that declining his broad interpretation of "detainer" creates a risk that a jurisdiction with an open arrest warrant for a defendant being detained out-of-state will reap the benefits of another in-state jurisdiction lodging a detainer without the burdens associated with doing so itself.  We even agree that the circumstances Spomer presents to us seem to manifest the risk that his hypothetical posits.  But we aren't persuaded that the risks presented by Spomer's hypothetical, or even his cases' underlying facts, warrant interpreting "detainer" as he urges or constitute an IAD violation or a subversion of its purpose.

¶ 35    Importantly, the IAD doesn't require a criminal justice agency to file a detainer on pending, untried charges against a prisoner in out-of-state custody.  *Fex*, 507 U.S. at 50 n.4.  And when a detainer

18

is filed, "[t]he applicability of the IAD is specifically limited to charges on the basis of which detainers have been filed." *People v. Campbell*, 742 P.2d 302, 306 (Colo. 1987); *see also Newton*, 764 P.2d at 1184, 1189 (where a prisoner in out-of-state custody had charges pending in two separate cases from Adams County, the IAD applied only to the one case listed in the detainer and not to the other case).

¶ 36    Moreover, the purpose of the IAD is to address the problems resulting from the filing of a detainer, and issues related to pending charges on which a detainer isn't filed fall outside of the IAD's reach. *See People v. Higinbotham*, 712 P.2d 993, 997 (Colo. 1986) ("[T]he primary purpose of . . . the [IAD] is to provide a mechanism for prisoners to insist upon speedy and final disposition of untried charges *that are the subjects of detainers* . . . .") (emphasis added); *Harter*, 216 P.3d at 609; *see also Campbell*, 742 P.2d at 307 (While "[m]any of the same adverse effects that attend the filing of a detainer are also presented by the existence of untried charges even in the absence of a detainer," "these concerns are expressly placed outside the purview of the IAD by its language requiring the filing of a detainer to trigger the statute's applicability.").

¶ 37 Finally, we are persuaded by *People v. Greenwald*, 704 P.2d 312 (Colo. 1985), where the Colorado Supreme Court faced a factual scenario similar to Spomer's hypothetical and declined to apply the IAD. While the opinion in *Greenwald* didn't answer the question posed in this appeal, we find its legal analysis instructive.

¶ 38 In *Greenwald*, the defendant was incarcerated in Oregon while he had two pending criminal cases in Jefferson County and a pending criminal case in Arapahoe County. *Id.* at 314. The Jefferson County prosecutor lodged a detainer with the Oregon custodial institution. *Id.* After the defendant was released on parole from his Oregon sentence, he was returned to Jefferson County. *Id.* Upon learning that the defendant was in custody in Jefferson County, the Arapahoe County prosecutor obtained a writ of habeas *ad prosequendum*, and the defendant was brought to Arapahoe County in connection with the pending charges there. *Id.* at 314-15.

¶ 39 The defendant filed motions to dismiss in all three cases for IAD violations. *Id.* at 315. Two divisions of the Jefferson County District Court granted the motions and dismissed the cases in that jurisdiction. *Id.* The Arapahoe County District Court also granted

the motion and dismissed its case, finding that the IAD applied to the charges pending against the defendant in its jurisdiction. *Id.*

¶ 40 The Colorado Supreme Court upheld the dismissal of the Jefferson County cases because the detainer lodged by the Jefferson County prosecutor triggered application of the IAD to those charges, and the Oregon custodial officials failed to comply with their obligations by not advising the defendant of his right to request a final disposition of the Jefferson County charges underlying the detainer. *Id.* But the supreme court reversed the Arapahoe County case's dismissal, concluding that "the Arapahoe County charges were not subject to the [requirements of the IAD] because those charges did not underlie a detainer previously lodged against the defendant." *Id.* at 316.

¶ 41 The supreme court held that, even though "the defendant's presence in Colorado was achieved by means of provisions of the IAD," the IAD didn't apply to the Arapahoe County charges because "the proceedings relating to his return to Colorado were concerned solely with charges pending in Jefferson County" and "the proceedings giving rise to the filing of the detainer against the defendant related to Jefferson County." *Id.* The court noted that,

21

unlike the Jefferson County cases, "[t]he Arapahoe County proceedings were made possible by . . . [the defendant's] return to the Arapahoe County District Court . . . as a result of the issuance of a writ of habeas corpus *ad prosequendum* to authorities who had custody of him." *Id.*; *see also Mauro*, 436 U.S. at 361 ("[A] writ of habeas corpus *ad prosequendum* is not a detainer for purposes of the [IAD].").

¶ 42 So we aren't persuaded that it would violate or undermine the purposes of the IAD to determine the arrest warrant in Spomer's Jefferson County case wasn't a detainer. Instead, we conclude that the district court abused its discretion by dismissing the case against Spomer because its findings that the arrest warrant was a detainer that triggered application of the IAD and that the IAD had been violated was a misapplication of the law. Because of our holding, we don't reach the People's alternative contention that the court erred by finding that the IAD violations required the dismissal of the case against Spomer.

¶ 43 Lastly, we decline Spomer's invitation to affirm the district court's dismissal of the case on the alternative basis that his constitutional rights had been violated. Because the district court

22

didn't rule on this issue, it should be addressed on remand in the first instance. *See LTCPRO, LLC v. Johnson*, 2024 COA 123, ¶¶ 46-47 (declining to address issues in the first instance on appeal because, "[i]n light of [its] ruling, the district court did not consider" or make factual findings on those issues, and "[a]lthough we have discretion to affirm on any ground supported by the record, 'we are a court of review, not of first view'" (quoting *Doe v. Wellbridge Club Mgmt. LLC*, 2022 COA 137, ¶ 31)).

## IV. Disposition

¶ 44     We reverse the district court's judgment of dismissal and remand the case to the district court to reinstate the charges and consider Spomer's contention that his constitutional rights were violated.

JUDGE BROWN and JUDGE HAWTHORNE concur.